7400

## LYON v. CHARLESTON & WESTERN CAROLINA RY.

1. MASTER AND SERVANT.—AMENDMENT TO A COMPLAINT alleging the conductor left said train and went into the depot, to the effect that the conductor left the train and did not return to see that his orders were carried out with due care, which was the proximate cause of the injury, sustained as within the discretion of the Circuit Judge.

2. IBID.—RES JUDICATA.—The evidence in this case on the first trial being different to that on the trial in question, as to the safety of the method adopted by the brakeman in making the uncoupling, as to the care of the conductor in overlooking the act of coupling and signalling the engineer ahead and to increase his speed, the judgment on former appeal that it was error not to grant nonsuit, is not *res judicata* here.

3. IBID.—FELLOW-SERVANT.—The engineer being bound to obey the signal of the conductor, and having no notice of the position of the brakeman in coupling, any violent jerk of the train caused by a signal of the conductor would be the negligence of the conductor and not of the engineer, a fellow-servant of the brakeman.

4. CONTRIBUTORY NEGLIGENCE.—The defendant having denied all negligence and set up the defense of contributory negligence, the instruction that the jury must consider contributory negligence in the light that it necessarily implies an admission of negligence on the part of defendant would have misled the jury, if the Judge had not instructed them plaintiff must show that defendant was guilty of negligence.

5. MASTER AND SERVANT.—Servant cannot plead presence of master for his safety from danger in obeying an order of such obviously dangerous character as no man of reasonable prudence would undertake.

6. IBID.—The servant in obeying the order of the master is not bound to choose at his peril the safest way, but in choosing between safe and unsafe methods he is only bound to use due care.

7. CHARGE.—It is best for trial Court to instruct jury as to the law of this State and not to contrast it unfavorably with the laws of other jurisdictions.

Before MEMMINGER, J., Greenwood, October term, 1908. Affirmed.

Action by A. B. Lyon against Charleston and Western Carolina Railway.

Charge of presiding Judge is:

"Gentlemen of the Jury: I have now, gentlemen, to submit this case to you for your decision upon the facts. It has occupied two days of the time of the Court, and is going on now into the third day. The investigation has been thorough and exhaustive, and, I am glad to say, conducted with that spirit of fairness and good temper which characterizes the members of this bar and the distinguished lawyer from Spartanburg, who participated in the trial.

"Now, I desire, first, gentlemen, to clear the deck for a simple statement of the issues and the principles of law involved, in my own language, and as simply as I can give it to you, and in order to do that I shall dispose first of these requests to charge, as they are known, which are propositions of law prepared by the lawyers, conceived by them to be applicable to the case and to be of assistance to you in understanding the law of the case; and I shall read those to you, gentlemen, making such comment on them as I proceed, as may be necessary—as I shall think necessary at the time—but asking you to bear in mind that, as charged, you take them in connection with such general statement of the law as I shall give you, gentlemen, after concluding them.

"Now, on behalf of the plaintiff, Lyon, in this case, you have these propositions, gentlemen, containing, first, an excellent statement of the issues involved in the case:

"1. 'The plaintiff in his complaint charges that the defendant was negligent in the following particulars: (1) That the conductor in charge of the train required the plaintiff to go upon and uncouple the cars while in motion, and go upon and apply the brakes to the trailing cars while in motion. (2) That the conductor in charge of the train failed to see that the train was properly, safely and securely operated, and that the speed of the train was not suddenly and violently increased until plaintiff reached a place of safety. (3) That the conductor gave the engineer a signal to increase the speed of the train as soon as plaintiff had uncoupled the

cars, and without waiting until plaintiff reached a place of safety. (4) In placing a car, called a "dummy," in the train at the wrong place, and thereby rendering it impossible to operate air brakes on the flat car and all cars in the rear of the "dummy," and thereby rendering the air brake appliances on the train in rear of the "dummy" useless and ineffective.'

"Now, as to that last charge of negligence, gentlemen, in the interest of presenting the issues in case clearly to you, while that may be a question susceptible of argument, and it has been argued to you earnestly and sincerely by counsel as being a ground upon which they desire to base recovery, I must charge you, gentlemen, that, under the decision of the Supreme Court in this case, that charge of negligence, even if proved, in my opinion, is too entirely remote and disconnected with the injury to be for your consideration at all. The Supreme Court has said, in reference to that, that it would be entirely too remote and speculative to say that had those air brakes been upon the train, and the man fallen from the position which it is claimed he fell, that he would have been saved from being crushed from the car—that that is not sufficiently reasonable to warrant being submitted to a jury at all; and the argument advanced here in favor of that specification, aside from the matter of the Federal statute, set out in the complaint, that the negligent construction of the train charged, had it not existed, that such an order would not have been given, and could not have been executed, is too entirely remote to be considered, in my estimation. It may be that if Mr. Lyon had never gone on the train at all, or if the other train had not been behind time, if you find that it was, that he would not have been injured; but, you see, those things are not even charged as contributing to or bringing about this injury, and to say that possibly such an order would not have been given, and had it been given could not have been executed, had the train been constructed as plaintiff claims it should have been,

in my judgment is so remote that, as a matter of law, it cannot come before you for consideration. And, therefore, at the risk of possible error against plaintiff, but in the interest of presenting the real issues to you here, I shall eliminate that specification of negligence entirely from your consideration, and you will confine yourselves to the other three, which I have just read.

"Now, then, again: 'And plaintiff charges that these acts of negligence were the direct and proximate cause of the injury which he alleges he sustained—which he alleges to be fifteen thousand dollars. Defendant denies the acts of negligence alleged, and denies that the plaintiff is entitled to any amount whatever. It sets up also certain special defenses, to wit: It alleges as a defense (1) Assumption of risk. (2) That he was injured by his own carelessness and negligence. (This defense, however, is covered by its general denial.) (3) Contributory negligence.'

"Mr. Grier: I think we omitted fellow-servant.

"The Court: I was going to read the fourth, negligence of fellow-servant, which I have added.

"Now, gentlemen, right upon that point, I want to explain to you this: It was argued to you by counsel that the fact that the railroad company set up a defense of contributory negligence was an admission on its part that it was negligent, and that, therefore, you started in the case with the assumption, admitted by the railroad company, that it was negligent, because it was argued, and correctly argued, that contributory negligence necessarily assumes negligence on the part of the defendant. Now, I want to explain to you, gentlemen, that that is correct in respect to considering the defense of contributory negligence, if you come to consider that defense; but the law is that an answer may contain inconsistent defenses; that failing on one, a party has a right to rely upon another; and this answer is so framed. It contains, first, a general denial, an absolute denial, of any negligence on its part; and that, of course, will be the first

question for you to consider, whether or not there was any negligence on the part of the railroad company, and in considering that defense you have there no admission whatsoever of negligence on the part of the railroad company. If you come to consider contributory negligence, as I shall explain to you hereafter, you consider that in the light of the principle that, of course, contributory negligence necessarily implies an admission of negligence on the part of the defendant.

"So bear that in mind, gentlemen.

"Now, the second request of the plaintiff : 'The plaintiff is required to make out his case by a preponderance of the testimony, and if he satisfies you by a preponderance of the testimony that he was injured, and that his injury was the result of the negligence of the defendant, in any one or more of the particular acts of negligence alleged in his complaint as a proximate cause, then he is entitled to a verdict at your hands, unless it is also shown that he contributed to his injury by his own negligence as a proximate cause thereof.'

3. " 'Every employee of any railroad corporation shall have the same rights'—and this is taken from the Constitution of the State, of 1895—'every employee of any railroad corporation shall have the same rights and remedies for any injury suffered by him from the acts or omissions of such corporations, or its employees, as are allowed by law to other persons not employees, when the injury results from the negligence of a superior agent or officer, or of a person having a right to control or direct the services of the party injured; and also when the injury results from the negligence of a fellow-servant engaged in another department of labor from that of the party injured, or of a fellow-servant on another train of cars, or one engaged about a different piece of work. Knowledge by an employee injured of the defective or unsafe character or condition of any machinery, ways or appliances, shall be no defense to an action for injury caused thereby, except as to conductors or engineers

in charge of dangerous and unsafe cars or engines voluntarily operated by them.'

4. " 'The conductor is a representative of the master, and if the servant's work is done in his presence, and under his immediate direction .and instructions, that is equivalent to an assurance by the master that the servant may safely proceed to do the work 'required by him, and he is, therefore, not bound in such case to search for danger.   He may safely rely for his safety upon the conduct of the conductor.'

"That, I charge you, gentlemen, with the limitation that I shall explain to you hereafter, that where an employee obeys an order given to him by his superior—where an employee of a railroad company obeys an order given to him by his superior, and that order involves a necessary and obvious danger, it is a question for the jury to say whether or not, in obeying that order, he was guilty of negligence—whether it was negligent for him to obey the order; because an order might be so obviously dangerous in its execution that it would be folly for a man to undertake to perform it, and if, under those circumstances, he did so, and the jury thought that a man of ordinary prudence and caution would not have obeyed the order, that it would have been negligence in him to do so, then he should not have obeyed it, and his doing so would be negligence.   I shall try to explain that to you a little more fully hereafter.

5. " 'If the plaintiff was injured by the negligence of the defendant as a direct and proximate cause thereof, concurring with the negligence of the fellow-servant or servants, the defendant is liable therefor as if it were the sole offender.'

6. " 'If the conductor negligently placed the plaintiff in a dangerous position, or negligently required him to do dangerous work, and the plaintiff in doing said work, and in carrying out the orders of the conductor, was injured by reason thereof, as a direct and proximate cause, I charge you, as a matter of law, that the defendant is liable to the

24—84

full extent of the injuries sustained, unless the plaintiff was
guilty of contributory negligence.'

7. " 'The jury are instructed that in awarding damages,
if they conclude from the evidence that the plaintiff is
entitled to damages, they may take into consideration plain-
tiff's suffering, if they believe from the evidence he did
suffer, and may consider whether his injury is permanent,
if they find he is injured, and if they further believe from
the testimony that such injury, if he was injured, will
impair his chances of earning a livelihood, they will take
that into consideration, and under such a verdict, if he is
entitled to a verdict, as will compensate plaintiff for the
injuries sustained.'

"Now, on behalf of the railroad company, gentlemen, the
defendant in the cause, we have these propositions:

1. " 'The jury can not find for the plaintiff unless they
are satisfied by the preponderance of the evidence that the
defendant railway company was guilty of negligence in
some one of the particulars stated in the complaint and that
such negligence was the proximate cause of the injury.

2. " 'If the jury find from the evidence that the proxi-
mate cause of the injury was the plaintiff's own negligence,
then their verdict must be for the defendant railway com-
pany.

3. " 'If the jury find from the evidence that the prox-
imate cause of the injury to the plaintiff was some negli-
gent act of the engineer in charge of the engine, then such
negligent act of the engineer would be the act of a fellow-
servant—the plaintiff can not recover, and the verdict must
be for the railway company.'

"Counsel for the plaintiff asked me to explain that to
you—that that means negligent act of the engineer. Under
the decision of the Supreme Court, the plaintiff could not
recover for a negligent act of the engineer—as if the engi-
neer, in making a start, had been careless in making it, care-
lessly started the train and caused a violent jerk, thereby

throwing down the plaintiff and injuring him. If that was the negligent, individual act of the engineer, acting carelessly, causing the injury, he could not recover under the doctrine of fellow-servant, which you have heard explained. But if the act of the engineer was not in itself a negligent act, but his starting of the train and causing a jerk. throwing the plaintiff down—if you find those facts were so—was brought about by a negligent act on the part of the conductor in giving a signal to the engineer negligently, if you find that he did do it, then that would not come under the head of the fellow-servant doctrine, because the conductor and the brakeman or flagman, Mr. Lyon, were not fellow-servants in the case. So take that proposition with that explanation.

4. " 'If the jury find from the evidence that the negligence of the defendant and the negligence of the plaintiff both united proximately in bringing about plaintiff's injuries, then the plaintiff can not recover, even if his negligence was not as great as that of the defendant, because the rule of law is that if the plaintiff contributed proximately by negligent act at all to his own injury, he is not entitled to recover.

5. " 'If the jury find from the evidence that in doing any work committed to him by this superior officer he adopted a dangerous method of doing such work, when there was a safer method which he could have adopted, and the adoption of the more dangerous method contributed proximately to his injuries then he can not recover and the verdict must be for the defendant railway company.'

"I charge you that gentlemen, with the explanation that, while it is possible that the plaintiff might adopt the more dangerous method, yet if the circumstances were such, if the emergency was such, that the jury were satisfied from the evidence that a man of reasonable prudence and caution would have selected that method—would not have had sufficient time to consider, to make a careful selection, and

perhaps made a mistake and selected a more dangerous way than was necessary, and more dangerous way than another way which existed, and which was less dangerous—if a man of ordinary prudence and caution would, nevertheless, have made that mistake, under the circumstances, why you would not hold the man responsible for having made that mistake. You would say, well, he did the best he could under the circumstances; he did all that a man of ordinary prudence and caution would have done, and that would be all the law would require of him. If he had selected the more dangerous place under those circumstances, that would be what is known in the law as error *in extremis;* a situation which could not be held as to be contributory negligence.

"Now, those are the technical propositions of law in the case, gentlemen, and, of course, they are very difficult to understand. So I want to bring the matter to you as plainly now as I can, from the standpoint as I see it.

"I want to draw your attention first, gentlemen, to the degree of care which you are to require of the railroad company throughout the inquiry; the standard by which you are to measure their conduct, and the standard by which you are to measure the conduct of the plaintiff. Now, the law fixes the standard. It says as to a railroad company, in reference to one of its employees, that it is required to use to that employee what is known as ordinary care. Now as to a passenger, gentlemen, the law requires a very much higher degree of care; it requires what is know as the highest degree of care as to a passenger, amounting almost to an insurer of his safety. But as to an employee, it does not require it to measure up to that high degree of care; it requires the railroad company to use only due care, such care as an ordinarily prudent railroad company, under the circumstances, would have exercised towards an employee.

"Now, that is the standard by which the law measures the railroad company, and it fixes a standard also for the plaintiff; it puts him in the position—says he must measure

up to the requirement of a man of ordinary prudence and caution, when you come to view his conduct in the premises.

"So, you view the situation from that standpoint, and you say, taking the specifications of negligence which have been enumerated in the statement that I gave you already, except that part in reference to the dummy car—you say first, gentlemen, your first inquiry will be: Did the conductor of the railway company give to the plaintiff, Mr. Lyon, the order in question, to make the switch, or fix the cars, as charged in the complaint; did he give him any such order —direct him to make the uncoupling and put on the brakes, as he claims the railroad conductor did order him to do? Now, you view that—in deciding that question, you view it in the light of the principle of preponderance of the evidence. You take the evidence upon that point and weigh it, and you say: Does the testimony outweigh on the affirmative of the proposition? Is there a greater weight of testimony upon the question in favor of Mr. Lyon's view of it, that the conductor did give him such an order? Now, if you are not satisfied by the greater weight of the testimony that the conductor gave him the order in question, why then you would stop your inquiry right there—his case would have failed; he would not have made out the first specification which he charges as against the railroad company as a basis for his recovery. But if the greater weight of the testimony satisfied you that the conductor did give him that order, then your next inquiry would be: Was it negligent on the part of the conductor, the representative of the railroad company, to give such an order? You say, from the testimony, would a conductor of reasonable prudence and caution have given such an order to his employee, and if you think that, in the exercise of ordinary care towards that employee, from the testimony, that he was negligent; if the greater weight of the testimony satisfies you that it was the want of due care on his part to give such an order, then you would find in favor of it being a negligent

order, and you would say that the conductor was negligent in that respect. And then, if you decide that, there would be a basis then for the recovery of the plaintiff; he would be entitled to recover, unless you went on further in your inquiry and found out and decided, by the greater weight of the testimony, that while the order was given to the plaintiff, and while it was a negligent order, yet still that, notwithstanding that negligent order, the plaintiff executed it in a negligent manner, thereby became guilty of what is known as contributory negligence, and therefore, under the law, could not recover.

"Now, the Supreme Court has said that if, in the execution of that order, if it was given and if it was a negligent order, if he selected the most dangerous way of executing the order, and if the order did not contemplate, from the standpoint of a reasonably prudent conductor, giving such an order, that it would be carried out in the way in which the plaintiff attempted to carry it out—that if the plaintiff was negligent in that respect, he could not recover. Now, in viewing that question, you view him, as I stated to you, as a man of reasonable prudence and caution, under the circumstances; you have to say, as I have already stated to you: Was the order of such an obviously dangerous character, the execution of which involved such a plain and obvious danger as that a man of ordinary prudence and caution would not have attempted to execute it; would have refused to execute it; would have told the conductor that he could not execute it, and would not have attempted to execute it at all? Now, if the order was of that character, gentlemen, if it involved that obvious danger, and the plaintiff went on, nevertheless and attempted to carry it out, and from the standpoint of a man of reasonable caution and prudence you would say he was careless in doing it, that he should not have done it, then he would not be entitled to seek or claim the protection of the order as against his carrying it out in a negligent manner. Just, for instance, as

if a man were to tell one of his employees to stick his hand into a moving saw or cog wheel, and the man went on and did it, although it was perfectly obvious that he was going to get his hand cut off or mashed up, it would be for the jury to say whether, under the circumstances there, that man was not negligent in obeying such an order, brought his own injury upon himself by his folly in obeying such an obviously dangerous order. Of course, you have to view all those things in the light of all the facts and circumstances in the case. There may be emergencies arising which would justify a man, acting with reasonable prudence and caution, in obeying an order which, under other circumstances. it would be folly and useless and negligent for him to obey. You have to take all those circumstances into consideration. There are circumstances where it would be wrong, and you would say that it would be wrong, for a man to pause; that it would be dangerous to the public welfare if a man should pause and should question the order of his superior, even though it appeared to him to be a dangerous order; and you might justify him, if the circumstances were such. and you would justify him in obeying the order and not stopping to question. But all of that, gentlemen, is a question for the jury, in each case, to say whether or not the man, in the exercise of reasonable prudence and caution, should have obeyed the order, attempted to carry it out; and if in the exercise of ordinary prudence and caution he should have attempted to carry it out and not question it, under the circumstances, then you go on to say: Did he do it in a reasonably prudent and cautious manner? As I · have explained to you, the circumstances may be such that a man can not and will not select the very safest way in which a thing can be done; he may select the most dangerous way; but it is for the jury to say whether, under the circumstances, in selecting that way, he was justified by the appearances, and the circumstances were such as that a man of reasonable prudence and caution would not have selected

any safer way, if there was a safer way. That is also a question for you.

"Now, gentlemen, passing on from that inquiry, you see that it involves right along what it known as contributory negligence; the law being that where a party is guilty of contributory negligence he is not entitled to recover; that is, although there is negligence on the part of the person who injures him, yet still, if he himself is negligent, and his negligence contributes as a proximate cause to his injury, the law does not allow him to recover. Now, that law, gentlemen, you are bound by, although it has frequently been brought in question as to the wisdom of it; because the general idea is that a general principle of self-preservation, which animates the mind of any man, will be sufficient to deter a man from being careless about getting injured himself. In fact, it has gone to the extent that Congress has passed a law known as the Employers' Liability Act, which you may have heard of, which does away with the doctrine of contributory negligence, and says that where both parties are negligent, nevertheless the person who is injured shall be entitled to recover. That law, once declared unconstitutional upon some ground, has been re-enacted by Congress, and is the law in the United States Courts. In the Maratime Courts of this country it is so. Where two vessels come into collision, and both are at fault, the law does not take away the remedy from either one, but simply divides the loss. So, where a man is injured on a vessel, and he himself is negligent and the vessel is negligent, too, the law divides the damages. But in our State, and it is the law of this State, by which you are bound, we have the doctrine of contributory negligence, which says that when the person claiming damages is himself negligent, and his negligence contributes as a proximate cause to his injury, the law will not attempt to apportion the degree of fault—divide it up; it says it would set a premium upon a man's own carelessness to allow him to recover under those circumstances,

and it leaves him where it finds him, without the right to recover.

"Now, I want to lay before you, gentlemen, a little more plainly what are meant by these technical terms, proximate cause and contributory negligence, and I may be able to do that by giving you some cases, actually happening, which have been adjudicated.

"You take the word proximate cause, gentlemen; it has a very technical and intricate meaning, apparently, but it seems very simple in this way: Take for instance, the case of a telegraph case—and I only want to state to you cases which merely involve the principle without impigning in any way upon the facts involved in this controversy, trusting that you may understand the principles involved, and yourselves apply them to the evidence here, which it is your duty to do. Now, it was charged in a case that the telegraph company was negligent in delivering a telegram—took a long time to deliver it, and was negligent about it, and that thereby a man was prevented from attending the funeral of his father, and suffered mental anguish; and he brought suit to recover for it, under our statute, which you know of. Now, it appeared in the testimony that the man said himself that he intended to take a certain train, which left the place where he lived at a certain hour in the morning—that if he had got the telegram in time, at the time when it should have been delivered, he would have left on that train; and his charge was, that, by the telegram being delayed, he could not leave on that train, or did not know of the death of his father until after that train had left, and, therefore, did not get on that train. It was abundantly proved in the case that the telegraph company was negligent in reference to the delivery of the telegram; but the testimony went on and showed that the train upon which that man said he would have left, had he received the telegram, was on that day several hours late, and, as matter of fact, did not arrive at the place where the man's father was buried until several

hours after the funeral had taken place. So, now, you see, gentlemen, that, while it was true that there was negligence on the part of the telegraph company in not delivering the telegram, yet that was not the proximate cause of the man's failure to get to his father's funeral, because, if he had got the telegram in time and gone on the train which he expected to go on, he would, nevertheless, not have got to his father's funeral, because the train was late; and the telegram had nothing whatever to do with it—was not the proximate cause of his injury, his sufferings. So, you see there what it means; it means the efficient cause, the real cause, without the intervention of which the thing would not have happened.

"Now, you take another case. Take, for instance, this collision that occurred upon the line of road here last night. Suppose it had appeared in the testimony that there was a box car left upon the main line of the track negligently by the railroad company, and suppose it had appeared that the engineer upon the passenger train was coming along without any headlight upon his engine, but nevertheless he had a right to expect that his track was clear coming into the station, that no box cars would be there upon the main line, and he had a right to come on and approach the station as he saw fit, but nevertheless it would have been negligent for him not to have had a headlight on his engine— that that would have been negligence in the engineer charged with the keeping of his engine; but when the collision occurred, could it be said that the absence of the headlight would have had anything to do with the running into of the box car, that that could have been the proximate cause of bringing about the injury? It seems to me not, gentlemen; but, of course, those are all question for the jury. It seems to me that would be so remote—not the efficient cause in bringing about the injury, and, therefore, not forming a proximate cause, in the sense of the law.

"Now, contributory negligence, gentlemen, as I define it to you in the language of the law, in order that it may be clear in the record, is defined to be the want of ordinary care by a person injured by the actionable negligence of another concurring with the negligence and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred. That is a technical definition of contributory negligence. Now, take, for instance, in order that you may understand that, the case of a man who was down here at one of the stations in one of the lower counties, and the train was coming along to the station. He had gone across the track, on the other side of the main line of the track, to buy something from a store. He heard the train blow. He had to get on the other side of the track to get on the train. He thought it was going to stop there. It came along—one of these fast passengers, which did not stop at all. In attempting to go across the track he passed right by a man who hollered to him that the train is not going to stop, you can not possibly get across. Nevertheless, seeing the train there dashing down upon him at a high rate of speed, he attempted to cross the track, got half way across, and was struck and killed by the railroad train. It was alleged to be, and proven to be, negligence on the part of the railroad company there in dashing by that station at a high rate of speed, and without ringing the bell or sounding the whistle, as the law required it to do—that was negligence on the part of the railroad company. But what was the real, efficient, proximate cause bringing about his injury? His own carelessness, gentlemen, in going right in front of a rapidly moving train—that was the proximate, contributing, efficient cause of his injury; and if a man's own negligence, if he is negligent, even though it is not the whole, real, efficient cause, yet if he contributes in any degree as a proximate cause to that injury, he is not entitled to recover.

"Now, I will give you another illustration, gentlemen, to illustrate to you this matter of proximate cause and contrib-

utory negligence; because, as I state to you from the mere statement of the words, they are difficult to understand. Take the case which I had the honor of trying up in Abbeville county. There was a case where an engine and train of cars fell through a trestle which was defectively constructed. Right behind that train was a freight train coming along. The rule of the road required the engineer of the freight train, that he should not run within ten minutes of any train ahead of him; that is, that at least ten minutes must intervene between the time of the train which was ahead of him and his own train. Well, now, it appeared in the testimony that he stopped at a station and got the time of the train which was ahead of him, and found that it was only six minutes ahead of him; nevertheless, instead of waiting until the full ten minutes elapsed, and then starting his train, he went right on, having only six minutes' interval between his train and the train in advance of him. When the other train fell in, when the head train fell into the trestle, the sound was heard by a watchman, who was within distance of the trestle. He seized his light, knowing the train was coming along behind there, and ran out to the main line in the endeavor to stop it and warn it of the danger which was ahead of it. He got to the track just as the freight train dashed by, and too late to signal the engineer of the danger ahead of him; and the result was that the freight engine went on into the broken down trestle, and the engineer on the freight engine was killed, and his family brought suit for his death.. Now, you see, gentlemen, that that was a plain case of what you would call contributory negligence, contributing to his injury as a proximate cause of it. Of course, there was negligence on the part of the railroad company in having this defective trestle, which had caved in underneath one of its trains, but if that man had been running as the rule required him to do, fully ten minutes behind the other train, under the facts as there proved the man with the lantern would have been at the

track and would have had ample time to be there stationed to wave him down as he came along, and he would have been saved from being killed. So, you see, that is a plain case of contributory negligence; his own negligence contributed to his injury; brought it about as a proximate, efficient cause, contributing to it. Suppose, however, there had been no man with a lantern, and, notwithstanding the fact that he was only six minutes behind the other train, that there had been no watchman there and no one to hear the shock of the disaster or warn him; and no lantern had been brought out to the track, either six minutes, five minutes, or any other time before it, and he had gone on and gone in there; then there, you see, although he was negligent himself in being only six minutes behind the train, yet still that negligence would not have contributed in any degree as a proximate cause of his injury, because there would have been nothing there to warn him—he would have gone into the wreck, anyhow—so that the fact of his being six minutes instead of ten minutes behind the other train would not have been any contributing, concurring, combining, or proximate cause of injury, and he would have, nevertheless, been entitled to recover, although guilty himself of negligence, because it would not have been, as you see, a proximate cause of the injury.

"Now, that is the law, gentlemen, and that is what the law means by contributory negligence and proximate cause, combining, concurring and going to make up an injury.

"Now, you have to take all those propositions, gentlemen, in the light of the facts in this case, and you have to say whether plaintiff has made out his case or not. If you decide that he has made out his case—and, as I charge you, the burden is upon him to make out either one or all of the three specifications of negligence by the greater weight of the testimony—upon that inquiry the burden is upon him, but if you find against the railroad company upon that inquiry, and go into the question of contributory negligence,

the burden is upon the defendant there; if you go on to the question of contributory negligence the doctrine of fellow-servant, or you go to the question of contributory negligence set out in the answer, why there the burden is upon the defendant railroad company.    That is what is known as special defence, and the greater weight of the evidence must go in favor of the defendant in order for defendant to be entitled to that defence.

"Now, as I have already stated to you, under the decision of the Supreme Court, this plaintiff can not recover for the negligent act of the engineer, if such be proved; if his injury was brought about through the direct negligence of the engineer in starting his train, or in any manner whatsoever, then plaintiff is not entitled to recover, under the Constitution and the decision of the Supreme Court.    But it is charged that the jerk whereby he is alleged to have been precipitated under the wheels of the train was causd by the negligence of the railroad company, and if you find that the conductor was the representative of the railroad company in this case, under the facts and circumstances disclosed, and that it was brought about by his negligence—that the moving off of the engineer was brought about by a negligent act on his part, negligently giving a signal when he should not have given it, when a man of reasonable prudence and caution, acting with ordinary care towards his employee, would not have given it, then, of course, the doctrine of fellow-servant, as I have explained to you, would not apply.

"Now, I think that involves all the questions in this case, except as to the question of damages, if you decide for damages.    Plaintiff claims in his complaint fifteen thousand dollars; and I charge you that you can consider, if you decide to give him damages, such elements as I have read out to you from his request to charge, such as pain and suffering, physical impairment of the person, loss of hearing capacity in the past, and such as is reasonably certain to result in the future from the injury, if you find that he has

been permanently injured. You have to take all that into consideration—any such elements as go to make up what is known as compensatory damages, the idea being to compensate the injured party for injuries received. In this case you have no such question as punitive damages—damages by way of punishment—but you confine your inquiry to damages by way of compensation if you decide for them.

"Now, that covers the whole case, gentlemen, so far as I can lay it before you. It is your responsibility to decide it, and you will decide it according to the law and the testimony, and the absolute justice, truth and right of the case. So I will ask you to take the record and write your verdict. If you find for the plaintiff you will say: We find for the plaintiff so much money, writing it out in words, and not in figures, as the law requires, and the foreman signs the verdict with the word foreman and the date on the back of this paper, which I will hand you, marked 'amended complaint.' If you find for the defendant you will say: We find for the defendant, and make the same subscription.

"Now, take this record, gentlemen. Write your verdict on the paper marked 'amended complaint.' I hand you also the answer, which contains the answer of the defendant— a statement of the defence of the defendant."

From judgment for plaintiff, defendant appeals.

*Messrs. S. J. Simpson* and *McGhee & Richardson,* for appellant.

*Mr. Simpson* cites: *Adjudications on former appeal are binding on trial court in second trial:* 65 S. C., 410; *Haltiwanger* v. *Ry.,* 64 S. C.; *Ringstaff* v. *Ry.,* 64 S. C.. *Plea of contributory negligence does not necessarily admit negligence:* 70 S. C., 474; *Scott* v. *Ry.,* 67 S. C.; 73 S. C., 503.

*Messrs. McGhee & Richardson* cite: *Amendment to complaint improperly allowed:* 81 S. C., 574; 80 S. C., 213;

Code of Proc., 194; 79 S. C., 270; 30 S. C., 564.  *Former adjudications, res judicata:* 77 S. C., 328; 5 S. C., 535; 6 S. C., 278; 17 S. C., 189; 20 S. C., 582; 64 S. C., 242; 65 S. C., 410; 81 S. C., 516; 44 S. C., 106; 21 S. C., 510; 52 S. C., 166; 43 S. C., 221; 37 S. C., 489; 65 S. C., 400; 34 L. R. A., 321.  *No presumption of negligence from injury:* 80 Fed. R., 865; 55 S. C., 483; 131 Am. St. R., 986; 123 Am. St. R., 690.  *Defendant does not admit negligence by pleading contributory negligence with general denial:* 13 Am. St. R., 84.  *Obedience of order of master on the spot:* 20 Ency., 140; Elliott on R. R., sec. 1315; 3 Cool. on Torts, 1050; 74 Fed., 186; 5 Am. St. R., 269; 26 Cyc., 1274.  *Duty of servant in choosing methods:* 26 Cyc., 1511; 83 Wis., 459; 93 Ala., 360; 35 S. E., 794; Thomp. on Neg., sec. 175; Labat on M. & S., secs. 933, 358, 444; 29 Cyc., 522; 47 S. W., 489; 26 Cyc., 1511.

*Messrs. Greer & Park,* contra, cite: *Negligence of plaintiff as proximate cause:* 1 Thomp., sec. 216; 61 S. C., 486; 51 S. C., 237; 55 S. C., 192; 58 S. C., 228; 60 S. C., 170; 70 S. C., 491; 68 S. C., 465; 75 S. C., 161; 63 S. C., 522; 73 S. C., 500; 80 S. C., 237, 570; 76 S. C., 204; 12 C. C. A., 576.  *Plaintiff not guilty of contributory negligence:* 81 S. C., 530; 77 S. C., 334; Thomp. on Neg., secs. 5590-2.  *As to amendment of complaint:* 77 S. C., 323; 82 S. C., 3; 78 S. C., 381; 74 S. C., 236; 54 S. C., 113; 80 S. C., 217; 70 S. C., 270; 81 S. C., 579.  *Modification of charge as to plea of contributory negligence cures error, if any:* 73 S. C., 500; 67 S. C., 146; 70 S. C., 474; 80 S. C., 7.  *When servant may rely on presence of master to protect from danger:* 68 S. C., 55; 194 U. S., 136; 73 S. C., 502; 49 Neb., 475; 1 Labatt on M. & S., 1259.  *Selection by servant of methods:* 81 S. C., 530; 72 S. C., 401; Thomp. on Neg., secs. 5371, 5376, 5374; 26 Cyc., 1257.  *Self-preservation doctrine:* 63 S. C., 521; 8 Ency. Ev., 859; 81 S. C., 333; 78 S. C., 202; 76 S. C., 207; 22 Ency., 128.

December 2, 1909.  The opinion of the Court was delivered by

MR. JUSTICE WOODS.  This action for personal injuries received by the plaintiff, while in the service of the defendant as flagman, rests on the allegation that because of the negligence of the defendant, he was thrown from a flat car attached to a moving freight train, and was run over by a cattle car which he had just uncoupled in obedience to an order of the conductor.

On the first trial of the cause the plaintiff recovered judgment, but on appeal this Court held that the Circuit Court should have granted a nonsuit, because the evidence, adduced on the trial by the plaintiff, clearly showed that the negligence of the plaintiff, if not the sole cause, was at least a contributing proximate cause of the accident and the resulting injury.  Accordingly, the judgment of the Circuit Court was reversed, and the cause remanded for a new trial.  The cause then came on for a hearing before Judge Gage and resulted in a mistrial.  It was afterwards tried for a second time before Judge Memminger and resulted in a judgment for the plaintiff, from which the defendant appeals.

The original complaint contained an allegation that the plaintiff undertook to get upon and uncouple the moving cars in obedience to the negligent and reckless order of the conductor of the train, and it contained also this allegation as paragraph nine: "That immediately after giving the instructions, directions, and order aforesaid, the conductor left the said train and went into the depot of the said defendant and absented himself from the said train."  After the cause was remanded for a new trial, amendments were allowed, striking out paragraph nine and inserting as paragraph fifteen this allegation: "That the said defendant was further negligent, careless and reckless in that the said conductor, who was in charge of the train, whose duty it was to see that the same was properly, safely and securely operated, left the same and did not remain to

25—84

see that the trainmen and engineer carried out his instructions and orders and the duty assigned to them with due care, and to see that the speed of the said train was not increased suddenly and violently until the plaintiff had safely gotten down and off the said flat car, which negligence, carelessness and recklessness was a direct and proximate cause of said injuries."

The first exception charging error in allowing the amendments cannot be sustained, because the allowance or refusal of amendments was within the discretion of the Circuit Judge, and there is nothing to indicate an abuse of discretion: *Taylor* v. *A. C. L.,* 81 S. C., 574, 62 S. E., 1113; *German-Am. Ins. Co.* v. *So. Ry.,* 82 S. C., 1.

The next position taken by appellant is, that the Circuit Court should have granted a nonsuit, because the evidence of the plaintiff on the last trial showed that he was injured while doing the very thing which this Court had held to be negligence contributing to his injury as a proximate cause, and without which it would not have been received; and that the evidence on the issues of negligence and contributory negligence was substantially the same as on the first trial.

The proposition admits of no doubt that when this Court orders a new trial, holding that a plaintiff should have been nonsuited; and on the second trial he adduces substantially the same evidence as on the first, the matter is *res judicata,* and a nonsuit must result. The principle was considered and stated in *Jones* v. *Ry. Co.,* 65 S. C., 410, 43 S. E., 884. But a physical act accompanied by some circumstances might show negligence beyond dispute, when the same act under other circumstances might well admit the inference that it was taken with due care. The inquiry then is, whether the plaintiff on the last trial made out a substantially different case from that presented to the Court on the former appeal. The substance of the evidence on the former trial, which the Court held would prevent a recovery, was this:

The train was at Hampton and the conductor, being in haste to get away, signalled the engineer to move, and while the train was going three or four miles an hour, ordered plaintiff and New, a colored brakeman, to cut a flat car loose, let the rear of the train trail behind and roll clear off the siding, put the flat car on the sidetrack and come back to the main line, get on the train and go to Brunson to meet No. 41, a passenger train. Plaintiff got on the flat car, not intending to uncouple, but with the purpose either to leap to the ground and then on the cattle car following, or to jump or step from the flat car to the cattle car after New had uncoupled. New, the brakeman, made an unsuccessful effort from the ground to use the lever on his side of the car. The plaintiff then, without giving a signal to stop the train or attempting to use the lever from the other side, or reporting to the conductor, or giving notice to anyone in control of the motion of the train, knelt on the edge of the flat car and uncoupled the lever with his hand. While in this position, by a sudden jerk of the train, he was thrown between the cars and injured.

The plaintiff testified that one walking on the ground could have used the lever provided at the side without going between the cars, and there was no evidence that such use of the lever was attended with any risk whatever, either from the nature of the ground or otherwise. It being perfectly evident, unless the most familiar physical laws were to be ignored, that the method of uncoupling used by the plaintiff was dangerous; and he himself testifying that he could have uncoupled from the ground by the use of a lever intended to be so used without going between the cars, and there being not a particle of evidence that there was danger in that method, the Court could not avoid the conclusion that the plaintiff used an obviously dangerous method, when a reasonably safe method was at hand.

But the evidence was far from the same on the last trial. The plaintiff's own testimony is widely different in a num-

ber of particulars.   He testified the last time that because of
the arm of the lever not being flush with the side of the
car, but eighteen or twenty inches from the side, it could
not be used from the ground without going between the
cars, and that for this reason it was more dangerous to use
the lever from the ground than in the way he adopted.   In
this last statement, he was corroborated by witnesses who
had had experience in the operation of cars.   The general
import of the evidence for the plaintiff was that it was dan-
gerous to uncouple moving cars in any manner, that the
method used by the plaintiff is less dangerous than to un-
couple from the ground, unless the ground is even and the
arm of the lever flush with the end of the car, so that there
would be no necessity to go between the cars.   From this
statement it is manifest that, on the first trial the evidence
of plaintiff himself admitted of no other inference than that
he had the choice between what seemed a safe way of un-
coupling and what was manifestly a dangerous way, and
chose the dangerous way; while on the last trial there was
evidence of facts tending to show that the method of uncoup-
ling, which on the first trial appeared to be safe, was more
dangerous than that used by the plaintiff.   Hence, there is
no ground for the Court to hold, as a matter of law, that on
the issue of contributory negligence the evidence now before
it admits of but one inference.   The fact that some of the
plaintiff's testimony is inconsistent with that given by him
at the other trials was a matter for the consideration of the
jury in weighing its credibility and for the Circuit Court
in considering the motion for a new trial.

There are also important differences on other points.   On
the first trial there was nothing to indicate that the jerk
which threw plaintiff from the car was any greater than the
jerks usually incidental to the operation of a freight train,
and there was no evidence that it was due to a signal of the
conductor, or that the signal to increase the speed should
not have been given by anyone except the plaintiff, unless

it was seen that he had safely made the uncoupling, or that an ordinary jerk would not have thrown off one in plaintiff's position. On the last trial the evidence tended to show that but for a violent jerk the plaintiff could have uncoupled in the way he did with safety; that he had a right to give the signal for increased speed after he had uncoupled or at least to rely on the conductor not giving it until it was seen that he and New had safely accomplished the uncoupling.

Further discussion of the facts would not be profitable. Enough has been said to show that there was evidence from which the jury could infer that the defendant, through its representative, the conductor, required of the plaintiff in the course of his employment the performance of a dangerous service, that it had provided no safer way for performance of the service than that which was adopted by the plaintiff, that the service required might have been performed in safety but for the negligent act of the conductor in signalling for increased speed before seeing that the uncoupling had been made safely. It follows that the Court could not say, as a matter of law, that the defendant was not guilty of actionable negligence or that the plaintiff was guilty of contributory negligence.

There was no evidence tending to show negligence on the part of the engineer as a fellow-servant of the plaintiff. As already shown, if the accident was due to a violent jerk caused by a sudden increase in the speed of the train, the engineer was in no wise responsible, for the testimony of the conductor shows the increase of speed was in response to a signal given by him. The engineer having no notice of the peril of the plaintiff was bound to obey the signal, and was in no way responsible for the consequences.

The defendant next assigns error in the instruction to the jury: "If you come to consider contributory negligence, as I shall explain to you hereafter, you consider that in the light of the principle that, of course, contributory negli-

gence necessarily implies an admission of negligence on the part of the defendant." This was not an incorrect statement of the law. *Cooper* v. *So. Ry. Co.,* 56 S. C., 91, 34 S. E., 16; *Charping* v. *Toxaway Mills,* 70 S. C., 470, 50 S. E., 186. If, however, the instruction above quoted had been given without qualification and explanation it would no doubt have misled the jury in a case like this, where the defendant denied all negligence and set up the defense of contributory negligence. In such a case, the defendant really means to say to the Court by its answer that it was not negligent at all, as alleged in the complaint, but if the Court should find that it was mistaken as to that, yet even then it would not be liable, because the plaintiff had been guilty of contributory negligence. This being the real meaning of the pleadings, it is better in charging the jury so to explain the plea of contributory negligence. But we do not think the jury was misled in this instance, because the presiding Judge had charged in the same connection that the defendant denied any negligence, and had given the instruction before that the plaintiff could not recover unless he had established by a preponderance of the evidence that the defendant was guilty of negligence in some one of the particulars stated in the complaint, and that such negligence was the proximate cause of the injury.

It is true that the Circuit Judge charged the following request of the plaintiff without referring to the defense that the plaintiff was injured by the negligence of a fellow-servant: "The plaintiff is required to make out his case by a preponderance of the testimony, and if he satisfies you by a preponderance of testimony that he was injured and that his injury was the result of the negligence of the defendant, in any one or more of the particular acts of negligence alleged in his complaint, as a proximate cause, then he is entitled to a verdict at your hands, unless it is also shown that he contributed to his injury by his own negligence as a proximate cause thereof." But the only fellow-servant

involved was the engineer, and in another portion of the charge the instruction was expressly given that the plaintiff could not recover if his injury was due to the negligence of the engineer.

The next exception seems to have been taken under a misapprehension. Had the Court adopted the following request of the plaintiff without qualification, as the exception seems to allege he did, it would have been error: "The conductor is the representative of the master, and if the servant's work is done in his presence, and under his immediate direction and instructions, that is equivalent to an assurance by the master that the servant may safely proceed to do the work required by him, and he is, therefore, not bound in such case to search for danger. He may safely rely for his safety upon the conduct of the conductor." But the correct modification was clearly stated in connection with the request, and still more explicitly in the general charge in this language: "Was the order of such an obviously dangerous character, the execution of which involved such a plain and obvious danger as that a man of ordinary prudence and caution would not have attempted to execute it; would have refused to execute it; would have told the conductor that he could not execute it, and would not have attempted to execute it at all? Now, if the order was of that character, gentlemen, if it involved that obvious danger, and the plaintiff went on, nevertheless, and attempted to carry it out, and from the standpoint of a man of reasonable caution and prudence you would say he was careless in doing it, that he should not have done it, then he would not be entitled to seek or claim the protection of the order as against his carrying it out in a negligent manner." *Carson* v. *So. Ry. Co.,* 68 S. C., 55, 46 S. E., 525; *Wilson* v. *So. Ry. Co.,* 73 S. C., 481, 53 S. E., 968; *Stephens* v. *So. Ry. Co.,* 82 S. C., 542.

The defendant requested this instruction: "If the jury find from the evidence that in doing any work committed to

him by his superior officer he adopted a dangerous method of doing such work, when there was a safer method which he could have adopted, and the adoption of the more dangerous method contributed proximately to his injuries, then he cannot recover and the verdict must be for the defendant railway company." A servant in carrying out the orders of the master is not bound to choose at his peril under all circumstances the safest method which could possibly be adopted. In discriminating between safe and unsafe methods and instrumentalities, the servant is bound to exercise due care, that is, the care to be expected of a man of ordinary prudence and presence of mind. *Green* v. *So. Ry. Co.,* 72 S. C., 401, 52 S. E., 45 ; *Hall* v. *N. W. R. R. Co.,* 81 S. C., 530, 62 S. E., 848. The modification of the request was in accordance with this principle.

The evidence on the former trial admitted of no other inference than that a comparatively safe method was at hand, and that there was no room for any reasonable man to doubt that the method adopted was dangerous  On this trial, as we have already shown, the evidence was different and justified the Court in submitting to the jury the issue of due care in selecting the means of uncoupling.

After critical examination, we are impressed with the general excellence of the charge under review, except so much of it as admits of the construction that it contrasts unfavorably the law of this State in contributory negligence with that prevailing in the maritime courts, and that established by the federal statute, known as the Employers' Liability Act. It was forcibly argued by appellant's counsel that it is of the utmost importance that juries should be stimulated to find verdicts according to the law as it is, and that remarks coming from the bench to the jury box, which could be construed as unfavorable criticism of existing laws, are unfortunate and tend to bring about unjust verdicts. The Circuit Judge did speak with some particularity of the law in other jurisdictions on

the subject of contributory negligence, and indicated the variance therefrom of the law of this State. We think it would have been better had the Circuit Judge made no reference to these differences; and the point is not free from difficulty. But when the instruction is regarded in its entirety, it states the law of this State so explicitly, and so directly requires the jury to follow it that this Court cannot say the jury was misled.

The grounds upon which error is assigned in refusing a new trial have been considered in the discussion of the motion for a nonsuit.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.