DANIEL KNUTTER, DEFENDANT IN ERROR, v. THE NEW YORK AND NEW JERSEY TELEPHONE COMPANY, PLAINTIFF IN ERROR.

Argued March 21, 1902—Decided June 16, 1902.

1. Plaintiff was a "lineman" in the employ of a telephone company, and was injured while engaged in work with others, under the charge of a foreman; one Runyon was with the party, exercising general supervision and control of the others, including the fore-

man, and at the same time actively participating in the work; Runyon was called the "district manager," and had general charge of the business of the telephone company throughout a large territory, including the place where the work in question was in progress; in that territory he was intrusted with the hiring and discharge of the employes of the company, including the linemen. There was evidence tending to show that the plaintiff's injuries were the direct result of negligence on the part of Runyon, while he was co-operating with the plaintiff in the work, and at the same time was supervising and directing the work. *Held*, that Runyon was a fellow-servant of the plaintiff, for whose negligence the common employer cannot be held liable.

2. The "superior servant rule," as a limitation upon the master's exemption from liability to a servant for the negligence of a fellow-servant, does not obtain in this state.

3. Where there is negligence in the performance or non-performance of some duty that is imposed by law upon the master for the safety of the injured servant, the master is responsible, irrespective of the rank of the negligent employe; but where the negligence is in the performance or non-performance of some duty that is merely incidental to the general employment, the master is not responsible, although the negligent servant was superior in rank to him who was injured.

On error to the Supreme Court.

For the plaintiff in error, *Edward A. & William T. Day.*

For the defendant in error, *Willard P. Voorhees.*

The opinion of the court was delivered by

PITNEY, J. The plaintiff was a lineman in the employ of the defendant, and brought this action to recover damages for personal injuries sustained by him while engaged in the performance of his duties. At the time of the occurrence in question he was working in company with two other linemen, one of whom, named Chamberlain, was the foreman. They were putting up a line of wire upon poles in the streets of Somerville, for the purpose of making a connection between the residence of a subscriber and the central telephone exchange in that town. One Runyon was with the party, and had general charge of its operations, besides participating ac-

tively in the work. He was called the "district manager," and there was evidence from which the jury had a right to infer that he had general charge of the telephone exchanges of the defendant at Westfield, Plainfield, Bound Brook and Somerville, and of the lines communicating with each exchange and the lines connecting the several exchanges together, and that he was intrusted with the hiring and discharging of all employes within the territory indicated. Runyon himself was called as a witness for the defendant, and testified that his duties were "to overlook all the work, and help out if they were pushed." He said: "I look after the whole business; everything that goes on; sometimes have to go up poles." The evidence, in short, tended to show that he was in general charge of defendant's business throughout the district in question, occupying a position of superiority over all the linemen, yet engaging, at times, personally in the work of line construction.

As to the cause of the accident plaintiff's evidence was to the effect that, under the immediate supervision and command of Runyon, the manager, plaintiff ascended a pole and stepped from it into the branches of a neighboring tree, about twenty feet above the ground; that Runyon stood upon the ground with the wire in his hand; that it was necessary to throw or swing the wire over a limb of the tree, in order that the wire might be raised to its proper position upon the poles; that thereupon Runyon directed the plaintiff to bear down upon the limb, in order to enable him to throw the wire over it; plaintiff complied, and Runyon succeeded in getting the wire over the limb, but it caught upon a twig. Runyon then directed the plaintiff to get hold of the wire and place it where it should go. Plaintiff at this time was standing upon the same limb on which the wire was lodged, and was preserving his balance by the grasp of his hand upon a limb that extended over his head. In obedience to Runyon's command, plaintiff "reached out upon the limb for the wire," when Runyon suddenly, and without warning, pulled down upon the wire, breaking the limb and precipitating the plaintiff to the ground. For the injuries thus received he sued his

employer in the present action.  Plaintiff claimed that the
limb would have borne his weight had it not been for the
added strain caused by Runyon's act in pulling upon the
wire, the insistment being that this was negligence for which
the employer was liable.

There was no dispute as to the relation occupied by Run-
yon to the general business of the defendant company, nor
was it disputed that he was co-operating with the gang of
linemen, and at the same time guiding and directing them
in their work.  It was denied that Runyon had caused the
plaintiff's fall, by pulling down upon the wire or otherwise,
but upon this point there was sufficient evidence to go to the
jury.

There was a motion to nonsuit and a motion that the jury
be directed to render a verdict in favor of the defendant.
Both were denied.  One of the grounds on which these mo-
tions were based was that Runyon was a fellow-servant en-
gaged in a common employment with the plaintiff, so that
for his negligence the common employer could not be held
liable.

A request made by the defendant that the trial judge should
instruct the jury that Runyon was a fellow-servant of the
plaintiff, so that for his negligence the plaintiff could not
recover, was also refused.

On the other hand, the court charged the jury that it was
for them to determine, from the evidence, whether Runyon
was a fellow-workman of the plaintiff, or was an official of
the defendant company, for whose acts it should be held
liable; at the same time giving the jury to understand that
from the fact that Runyon, in respect to the work in question,
was the superior and manager, the others being subject to his
orders, and that by his orders the plaintiff was sent into the
tree, the jury would have a right to find that Runyon was an
official of the defendant company in such a sense that the
company should be held responsible for his acts, if negligent
in any way.

The jury having rendered a verdict in favor of the plaintiff,
and judgment having been entered thereon, the defendant now

assigns for error the above-mentioned rulings of the trial judge and that part of his charge just referred to.

The only question requiring consideration is whether the defendant can be held liable, at the plaintiff's suit, for the negligence of Runyon, in view of the familiar rule of law that exempts the master from liability for personal injuries received by one of his servants in consequence of the carelessness of another while both are engaged in the common employment.

It is manifest that, in order to sustain this judgment, we must hold that Runyon, by reason of being a district manager, placed by the defendant in entire charge of its plant, working force and operations within that district, with power to employ and discharge subordinates, and being, at the same time, in direct command of the work in which the plaintiff was engaged, became the representative of the defendant—its vice principal or *alter ego*—in such a sense and to such an extent that for his negligence, either in co-operating with the other workmen or in controlling and directing their work, the defendant can be held liable to the plaintiff.

In some jurisdictions a tendency has been manifested to hold the master liable to a servant who sustains personal injuries through the negligence of a general superintendent, or department manager, or of a servant of any grade superior to that of the servant injured; and this irrespective of the character of the work in the performance of which the negligence occurs. The rule that admits of such liability is commonly called the "superior servant rule." It obtains in Ohio and some other states. *Little Miami Railroad Co.* v. *Stevens,* 20 *Ohio* 415; *Cleveland, &c., Railroad Co.* v. *Keary,* 3 *Ohio St.* 201; *Berea Stone Co.* v. *Kraft,* 31 *Id.* 287, 27 *Am. Rep.* 510.

But the courts of our own state have never adopted this rule. There are expressions in some opinions indicating a recognition of such a limitation upon the master's exemption from liability to his servant for the negligence of a fellow-servant. But the liability has not in any case been imposed upon the master on the mere ground that the negligent servant occupied a position of superiority or control over the

party injured. In *Smith* v. *Oxford Iron Co.,* 13 *Vroom* 467; *O'Brien* v. *American Dredging Co.,* 24 *Id.* 291, and *Gilmore* v. *Oxford Iron Co.,* 26 *Id.* 39—all of which were decided by the Supreme Court—the relative rank of the negligent servant and the injured servant was referred to, but the decision, in each instance, turned upon the question whether the negligence arose in the performance of a mere servant's duty, or in that which the law imposed upon the master. In the Smith case the liability was sustained because the negligence consisted in the failure to perform a duty which the common employer owed to the injured servant, and which could not be delegated. In the O'Brien and Gilmore cases the liability of the employer was denied, notwithstanding the negligent servant was superior to him who was injured; and this on the ground that the negligence occurred in the performance of the work of a mere fellow-workman.

Numerous recent decisions in this court proceed upon the same general principle, viz., that where the negligence is in the performance or non-performance of some duty that is imposed by law upon the master for the safety of the injured servant, the master is responsible, irrespective of the rank of the negligent employe; but where the negligence is in the performance or non-performance of some duty that is merely incidental to the general employment, the master is not responsible, although the negligent servant was superior in rank to him who was injured, or may, at other times, have been intrusted with the performance of the master's duties. Some of these decisions are cited in an opinion delivered at the present term of this court, in the case of *Smith* v. *Erie Railroad Co., ante p.* 636. The quotations there given from the opinions in *Maher* v. *Thropp,* 30 *Vroom* 186; *McLaughlin* v. *Camden Iron Works,* 31 *Id.* 557, and *Curley* v. *Hoff,* 33 *Id.* 758, are equally applicable to the present case.

It has not been forgotten that Runyon, at the time of the occurrence in question, not only held a position of superiority to the plaintiff, but was actually exercising his authority by guiding and directing the plaintiff's movements at the moment of the accident. Although in so doing Runyon did, in

a sense, represent the common master, yet, according to the great weight of authoritative decisions, such conveyance of orders is merely incidental to the common employment, and is not a duty for whose non-performance or negligent performance the master can be held liable in damages to one of his servants who may be injured thereby.

What is known as the "superior servant rule," already adverted to, has for its foundation the notion that the superior servant embodies the authority of the common master, so as to impose a liability upon the latter for his defaults. As already shown, this rule has been distinctly repudiated in this state. It may be added that it is now rejected almost universally in other jurisdictions. One of the most conspicuous decisions sustaining it was the Ross case, in the United States Supreme Court, decided in the year 1884, by a divided court (112 *U. S.* 377), where, principally on the authority of the Ohio and Kentucky decisions, a railroad company was held liable to a locomotive engineer for injuries sustained through the negligence of the train conductor in failing to communicate running orders to the engineer, it appearing that, by the general rules of the company, the conductor had charge and control of the train and all persons employed on it, and was responsible for its movements while on the road, and that the conductor was specially charged with the duty of communicating the running orders to the engineer. But the Ross case, after being, in effect, seriously criticised by the same court in *Baltimore and Ohio Railroad Co.* v. *Baugh,* 149 *Id.* 368, was at last distinctly overruled in *New England Railroad Co.* v. *Conroy,* 175 *Id.* 323.

In an able article by Judge Dillon on the "American Law Concerning Employer's Liability," in 24 *Am. L. Rev.* 189, after reviewing the history of the adjudications in this country, he uses the following well-considered language: "In the general American law, as I understand it, the doctrine of vice principal exists to this extent, and no further, viz., that it is precisely commensurate with the master's personal duties towards his servants; as to these the servant who represents the master is what we may for convenience call a vice prin-

cipal, for whose acts and neglects the master is liable. Beyond this, the employer is liable only for his own personal negligence. This is a plain, sound, safe and practicable line of distinction. We know where to find it and how to define it. It begins and ends with the personal duties of the master. Any attempt to refine, based upon the notion of 'grades' in the service or, what is much the same thing, distinct 'departments' in the service (which departments frequently exist only in the imagination of the judges and not in fact), will only breed the confusion of the Ohio and Kentucky experiments, whose courts have constructed a labyrinth in which the judges that made it seem to be able to 'find no end in wandering mazes lost.' "

Now, it is obvious that the work in which Runyon was engaged, and wherein the jury have found him negligent, was the mere performance of the general service of the employer in common with the plaintiff. For all purposes of throwing the wire over the limb upon which the plaintiff stood, he was to all intents and purposes a "lineman" like the plaintiff. The circumstance that, at other times, Runyon may have been called upon to perform duties that were "personal" to the master, in the sense that Runyon's negligence in their performance or non-performance would be chargeable to the employer, is immaterial upon the present case.

In behalf of the plaintiff it is argued that if the master in the case at hand had been an individual, instead of a body corporate, and, being personally present, had pulled the wire negligently, causing injury to the plaintiff, he would be liable. This may be readily conceded. So, also, it may be granted that if Runyon was negligent to the injury of the plaintiff, Runyon was liable. In either case the liability would be imposed upon the individual for his own negligence, and without any resort to the maxim *respondeat superior,* which lies at the foundation of the master's liability for the defaults of his servants. This liability, on familiar principles, does not lie in favor of a fellow-servant.

It appearing clearly that Runyon was the fellow-servant of the plaintiff, the common employer could not be held liable

for his negligence, in the absence of evidence tending to show that he was, in general, incompetent or unfit for the duty he was set to perform. It follows that the trial judge erred in refusing the motion to direct a verdict for the defendant.

The judgment should be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, COLLINS, FORT, GARRETSON, HENDRICKSON, PITNEY, BOGERT, ADAMS, VREDENBURGH, VROOM. 14.