8013

#### HUNTER v. D. W. ALDERMAN & SONS CO.

1. MASTER AND SERVANT.—A single act of negligence on the part of a servant does not show incompetency or that the master knew or ought to have known the servant was incompetent.

2. IBID.—NEGLIGENCE.—Where a servant in discharging his duty has the choice of two ways—one entirely safe and the other obviously and greatly dangerous—and he adopts the dangerous way and is injured, he is guilty of negligence and cannot relieve himself of the consequences by showing that was the customary way of performing that duty.

3. Ibid.—The request that the servant could recover if he was negligent in not adopting a safe way, if that was not the proximate cause of the injury, as made here, is defective in that it assumes that the alleged cause of the injury was the negligence of the master and not of a fellow-servant.

4. Ibid.—Fellow-Servant.—Where the master assumes to keep the machinery still so that his servant may adjust it, and it is started by the order of one who is entrusted by the master with the authority to require an act done which would start it, such act would be that of the master and the one giving the order would be the representative of the master in that particular act.

5. Rehearing refused.

Before Klugh, J., Clarendon, February, 1910. Reversed.

Action by Walker F. Hunter against D. W. Alderman and Sons Co. Plaintiff appeals.

*Mr. L. D. Jennings,* for appellant, cites: *Issue of fellow-servant was for jury:* 71 S. C. 56; 76 S. C. 549; 78 S. C. 383; 77 S. C. 553. *Master is liable if injury was caused by act of servant under order of master:* 84 S. C. 389. *Plaintiff should recover if negligent, if his negligence was not the proximate cause of the injury:* 51 S. C. 222.

*Messrs. Charlton DuRant* and *Davis & Weinberg,* contra.

*Mr. DuRant* cites: *Proof of one act of negligence is not proof of incompetency:* 19 So. 399. *Servant only represents the master when performing the duties of the master:* 71 S. C. 57; 72 S. C. 237; 74 S. C. 424; 77 S. C. 432. *Where servant has choice of two ways and selects the dangerous one he cannot recover:* 39 S. E. 722; 77 S. C. 430; 72 S. C. 97.

The opinion in this case was filed on September 6, 1911, but remittitur held up on petition for rehearing until

October 2, 1911.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   The plaintiff was employed in June, 1906, as a saw filer in the defendant's large sawmill at Alcolu.   On the morning of June 2 plaintiff inquired of Robert Alderman, the manager, if the mill would run that day, and on being informed that it would not he went into the saw pit to adjust the mill.   The valve in the pipe between the boiler and the engine having been opened, the blowing of the whistle at the noon hour caused the saw to move and cut the plaintiff.   For the injury so received this action was brought, and on the trial the verdict was in favor of the defendant.

There was no doubt that the injuries were caused by the negligence of some one.   The issues on the trial were: Was there any negligence of the defendant operating as a proximate cause of the injury?   Was the injury due solely to the negligence of the plaintiff or to the negligence of a fellow-servant?   Was the plaintiff guilty of contributory negligence?   On the part of the plaintiff there was evidence that he was charged with the duty of adjusting the mill as well as filing the saws, that he went into the pit after notifying the manager that he wished to adjust the mill and receiving his assurance that the mill would not run, and that he was employed in that work in the saw pit, a very dangerous place, when the saws were started without warning, in consequence of the blowing of the whistle by Simon Witherspoon, the fireman.   That the fireman was a fellow-servant of the plaintiff was not in dispute, but plaintiff undertook to prove that he blew the whistle in obedience to the order of D. G. Hankinson, and that Hankinson was the representative of the master.   The plaintiff admitted that there was a safety device called a tightener, and that if he had raised it before going into the pit the saws would not have moved when the engine started; but he and others testified that the

raising of the tightener would have interfered in some degree with the adjustment of the mill.

On the part of the defendant Robert Alderman, the manager, admitted that he had told the plaintiff that the mill would not run that day, but denied that the plaintiff was charged with the work of adjusting the mill. There was evidence that the tightener was provided for the express purpose of disconnecting the saws from the engine so that work could be done on the saws and in the saw pit without danger of injury.

There was no evidence whatever tending to prove negligence in the employment of incompetent servants, and the Circuit Court was right in so charging the jury. Plaintiff's counsel contend that there was such evidence of negligence on the part of the negro fireman who blew the whistle as to warrant the inference of incompetency. The fireman was a witness for the plaintiff and testified that, contrary to the order of the manager, he opened the valve in order to blow the whistle and thus started the machinery without notice to employees working around the mill. Assuming this to be an act of negligence on his part, the general rule is that a single act of negligence by a servant does not tend to show that the servant was incompetent; much less is it to be regarded evidence that the master knew or ought to have known at the time of the accident that the offending servant was incompetent. *Galveston etc. R. Co.* v. *Davis* (Tex.), 48 S. W. 570; *Bank* v. *Chandler* (Ala.), 39 Sou. 822; *Smith* v. *Chicago etc. Ry.* (Ill.), 86 N. E. 150; *Spring V. Co.* v. *Patting,* 86 Fed. 433; 26 Cyc. 1297; 2 Thompson on Negligence 1054.

The following instruction to which exception is taken has been approved in numerous cases: "If the plaintiff, Mr. Hunter, while in the discharge of his duty to the defendant, had the choice of two ways of performing it—one entirely safe, and the other obviously and greatly dangerous, and adopted the dangerous way and as a

result was injured, he was guilty of negligence, which will bar a recovery by him in this action based on the defendant's negligence—and he cannot relieve himself of the consequences of such contributory negligence by showing that it was customary to perform the duty in the dangerous way." *Stephens* v. *Sou. Ry.*, 82 S. C. 542, 64 S. E. 601; *Lyon* v. *Charleston & W. C. Ry. Co.*, 84 S. C. 364, 66 S. E. 282; *Lowe* v. *Sou. Ry. Co.*, 85 S. C. 363, 67 S. E. 460; *Dover* v. *Lockhart Mills*, 86 S. C. 229; *Lewis* v. *Gallivan Building Co.*, 87 S. C. 210.

There was no error in refusing to charge the request that even if the plaintiff was negligent in not raising the tightener before going into the saw pit, he could nevertheless recover if the jury should find that not to have been the proximate cause of the injury, and that the letting off of the steam was the proximate cause. The request was not sound because it assumed that the letting off of the steam was negligent, and was the negligence of the defendant and not of a fellow-servant.

The only point of difficulty is whether the Circuit Judge erred in charging the jury that Hankinson, at whose instance the fireman opened the valve and blew the whistle, was a fellow-servant of the plaintiff. The following rule, stated in *Brabham* v. *Tel. Co.*, 71 S. C. 53, 50 S. E. 716, has been followed in many cases: "In determining who are fellow-servants, the test or rule in this State is not whether the servants are of different grade, rank or authority, one of them having power to control and direct the services of another, but the test is in the character of the act being performed by the offending servant, whether it was the performance of some duty which the master owed to the injured servant, the performance of which duty the master intrusted to the offending servant."

Applying this rule, we think there was some evidence for the consideration of the jury on the issue whether Hankinson was a fellow-servant or the representative of the master

*in directing the fireman* to blow the whistle. He testified that he was foreman of a gang of laborers with authority to employ and discharge, that he did not employ the fireman, but was allowed to direct him to the extent of telling him when to blow the whistle so as not to work the laborers over time, and that on this occasion he did direct the fireman to blow the whistle. The testimony of the plaintiff that the manager, who was the general representative of the defendant, had assured him that it would be all right for him to adjust the mill as the machinery would not run that day, tended to show a special obligation assumed by the master with respect to the safety of the place of labor. If it be true that the master assumed this special obligation to keep the place of labor safe by not starting the machinery, and it was started by the direction of a person who was intrusted by the master with the authority to require an act to be done which would start the machinery, such act would be the act of the master and such person the representative of the master in that particular act.

There was evidence tending to show that Hankinson was not the representative of the master, but a mere fellow-servant; but the considerations above set out show that there was also evidence tending to show that he was the representative of the master. In charging the jury that they could draw no other inference from the evidence than that Hankinson was a fellow-servant of the plaintiff, we think the Circuit Court erred, but we express no opinion as to what conclusion the jury should draw from the conflicting evidence on the subject.

It is the judgment of this Court that the judgment of the Circuit Court be reversed, and the cause be remanded to that Court for a new trial.

October 2, 1911. Petition for rehearing dismissed by formal *per curiam* order filed this day.