10697

## LEOPARD v. BEAVER DUCK MILLS

### (108 S. E. 190)

1. MASTER AND SERVANT—DUTY TO PROVIDE REASONABLY SAFE PLACE.—
It is the duty of the master to provide the servant a reasonably
safe place to work.

2. MASTER AND SERVANT—NEGLIGENCE OF EMPLOYEE IN CHARGE FOR
MASTER HELD QUESTION FOR JURY.—Where a card grinder when
employed was directed to another card grinder for assignment
to work, and by him told to put a screen in a machine, and while
doing so was injured when the other card grinder put the ma-
chinery in motion, a verdict was erroneously directed for defendant,
as the testimony tended to show that the place of work was rendered
dangerous by one in charge for the master, without notice to plain-
tiff.

Before PRINCE, J., Greenville, February, 1921. Re-
versed.

Action by T. L. Leopard against Beaver Duck Mills.
From directed verdict for defendant the plaintiff appeals.

*Messrs. Martin & Henry,* for appellant, cite: *Plaintiff
entitled to benefit of testimony of defendant's witnesses:*
110 S. C., 565. *Test of who was representative of the
master:* 107 S. C., 16; 18 S. C., 270; 18 R. C. L., 735,
744; 89 S. C., 507; 95 S. C., 149; 96 S. C., 154; 66 S. C.,
485; 55 S. C., 102; 102 S. C., 223. *Servant is an appliance:*
63 S. C., 559; 70 S. C., 315; 114 S. C., 349. *No assump-
tion of risk without knowledge:* 72 S. C., 420; 80 S. C.,
248; 84 S.C., 283; 99 S. C., 396; 107 S. C., 16. *Sufficient
inference of negligence to be submitted to the jury:* 76 S.
C., 63; 71 S. C., 159; 86 S. C., 304; 98 S. C., 129; 86 S. C.,
231; 74 S. C., 90; 83 S. C., 274; 110 S. C., 566; 69 S. C.,
107; 75 S. C., 156; 94 S. C., 412. *Fellow servant mixed
question of law and fact:* 51 S. C., 96; 18 R. C. L., 719
*Where jury fails to agree:* 1 Civ. Code 1912, Sec. 4050;
54 S. C., 236 .

*Messrs. Haynesworth & Haynesworth,* for respondent,
cite: *Rulings on motions are not charges on facts:* 103

S. C., 210; 91 S. C., 161; 82 S. C., 321; 50 S. C., 299; 101 S. C., 360.  *Fellow servant*:  71 S. C., 53; 72 S. C., 237; 76 S. C., 539; 77 S. C., 328; 78 S. C., 413; 80 S. C., 232; 87 S. C., 449; 89 S. C., 502.  *Denial of right of argument must be express, and not acquiesced in to furnish basis of error*:  38 Cyc., 1471; 25 Ga., 85; 66 Ga., 115; 82 Ga., 156; 8 S. E., 424; 9 So., 311, (Ala.).

August 1, 1921.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The plaintiff's testimony tends to show:  The plaintiff was employed as a card grinder in the defendant mill. While he was employed as an expert card grinder, he was new in the mill, and was directed by another card grinder, Atkins, for assignment to work.  Atkins gave the plaintiff a screen, and told him to set it into the machine.  The setting in of the screen ordinarily took about an hour.  The screen was very near a very heavy cylinder, covered with teeth to catch the cotton.  If the cylinder was still, the work was safe, but if the machinery should be set in motion, it became exceedingly dangerous.  When the plaintiff had been working about 15 or 20 minutes, the other card grinder started the cylinder in motion.  It caught the plaintiff's hand, and produced the injury complained of.  The trial Judge directed a verdict for the defendant.  From the judgment entered on a directed verdict this appeal is taken.

There are several exceptions, but one question only 1, 2 need be considered.  It is the duty of the master to provide the servant a reasonably safe place to work.  There is testimony tending to show that the place at which the plaintiff was put to work was safe enough when he started to work, but rendered very dangerous by one in charge for the master, and this change was made without notice to the plaintiff and caused the injury. *Hunter v. Alderman*, 89 S. C., 71 S. E., 1084.

"The following rule, stated in *Brabham v. Tel. Co.,* 71 S. C., 53; 50 S. E., 716, has been followed in many cases: 'In determining who are fellow servants, the test or rule in this State is not whether the servants are of different grade, rank, or authority, one of them having power to control and direct the services of another, but the test is in the character of the act being performed by the offending servant, whether it was the performance of some duty which the master owed to the injured servant, the performance of which duty the master intrusted to the offending servant.' "

It is true that Atkins said he asked the plaintiff to listen for defects, and the plaintiff, instead of doing so, put his hand in the dangerous place. The jury should have been allowed to settle that matter. The exception that raises this question is sustained.

The other quetsions refer to errors peculiar to the first trial, and need not be considered.

The judgment is reversed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur.

MR. JUSTICE COTHRAN (dissenting): I think the facts and the law of this case thoroughly justify the action of Judge Prince in directing a verdict in favor of the defendant upon the grounds stated by him.

The facts are these: The defendant owns and operates a cotton mill at Greenville. Its principal officers were Moody, superintendent; Meredith, boss carder, and two section hands, E. H. Atkins and his brother, Bowen Atkins. The duty of E. H. Atkins as a section hand was to direct the hands in his section in the operation of the cards. Along with this duty was that of card grinder, a manual service. On the occasion of the injury it became necessary to overhaul certain of the card machines, the process being to take them apart, grind the cards, and set the machines up again. Atkins had authority to call to his assistance any

of the hands in his section.   On Saturday before the acci-
dent on Monday, the plaintiff applied to Meredith, the
boss carder, for work, representing himself as an expe-
rienced card grinder.   He was employed, and on Monday
reported for work.   Meredith took him to Atkins, and in-
structed him to work under the direction of Atkins. . A
certain card had been dismantled and ground and was to
be set back up again.   Atkins and Leopard then proceeded
to do this work, and worked upon it for about two hours.
They set the "licker-in" in its socket, and then Atkins told
Leopard to set the screen at the other end of the machine.
To do this Leopard had to put his hand very close to the cyl-
inder upon which the card teeth were fixed.   While he
was so engaged, Atkins, without notice to Leopard, turned
the cylinder, and the plaintiff's hand was caught between
the cylinder and the screen, causing the injury for which
he asked damages.

It is clear · from the foregoing statement, taken most
favorably to the plaintiff :   (1)   That Atkins was a supe-
rior servant to Leopard, with the right to direct his move-
ments; (2) that Atkins and Leopard were engaged in the
common undertaking of dismantling, grinding, and setting
up the card machines; (3) that Atkins directed Leopard
to set the screen; (4) that while Leopard was so engaged
Atkins turned the cylinder which caught and injured Leop-
ard's hand; (5) that the injury resulted from the negligence
of Atkins in not giving Leopard notice of his intention to
turn the cylinder.

After the close of all the testimony, in fact after the
motion had been refused and the jury had wrestled with
the case for some hours, the Circuit Judge directed a ver-
dict in favor of the defendant upon the ground that Atkins
and Leopard were fellow servants, and the defendant could
not be held responsible for the negligence of Atkins.

The pivotal question in the case, therefore, is whether
or not under these circumstances Atkins and Leopard were

fellow servants; an affirmative solution of the question absolving the defendant from the legal consequences of the negligent acts of Atkins, and justifying the direction of a verdict for the defendant by the Circuit Judge.

Among the many theories in reference to the relation of fellow servants, this Court has adopted with emphasis and reiteration this: The question whether a delinquent servant was or was not a vice principal, as regards the injured person, is ultimately determinable by the character of the act which by his negligence caused the injury, regardless of the fact that the delinquent servant was of a servant rule, so far as that relation may compel the control and direct the services of the other; that the superior servant rule, so far as that relation may compel the conclusion of vice principalship, does not obtain. . This is the rule in the Federal Courts, Supreme and subordinate, Alabama, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oregon, Pennsylvania, Rhode Island, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin. 4 Labatt (2d. Ed.) p. 4413.

The principle is thus expressed in *Brabham v. Postal Co.,* 71 S. C., 53; 50 S. E., **716**:

"In determining who are fellow servants, the test or rule in this State is not whether the servants are of different grade, rank or authority, one of them having power to control and direct the services of another, but the test is the character of the act being performed by the offending servant, whether it was the performance of some duty the master owed to the injured servant, the performance of which duty the master had intrusted to the offending servant."

Similarly in *B. & O. R. Co. v. Baugh,* 149 U. S., 368; 13 Sup. Ct., 914; 37 L. Ed., 772:

"The question turns rather on the character of the act than on the relations of the employees to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master; but if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is held liable therefor."

And in *Justice v. Pennsylvania Co.,* 130 Ind., 321; 30 N. E., 303:

"On the other hand, if, at the time of the alleged negligence the servant was not engaged in the performance of a duty which the master owed to his servants, but was in the discharge of a duty which the servant acting owed to the master, he will be held to be a fellow servant with others engaged in the same common business, and the master will not be liable for any injury inflicted upon such fellow servant by reason of his negligence."

To the same effect are *Sofield v. Guggenheim Smelting Co.,* 64 N. J. Law, 605; 46 Atl., 711; 50 L. R. A., 417; *McElligott v. Randolph,* 61 Conn., 157; 22 Atl. 1094; 29 Am. St. Rep. 181; *Curley v. Hoff,* 62 N. J. Law, 758; 42 Atl., 731; *Flike v. Railroad Co.,* 53 N. Y., 549; 13 Am. Rep. 545; *Fuller v. Jewett,* 80 N. Y., 46; 36 Am. Rep. 575; *Schroeder v. Railroad Co.,* 103 Mich., 213; 61 N. J. 663; 29 L. R. A., 321; 50 Am. St. Rep., 354; *Gilmore v. American Tube & Stamping Co.,* 79 Conn., 498; 66 Atl., 4; *Railroad Co. v. Barker,* 169 Ind., 670; 83 N. E., 369; 17 L. R. A., (N. S.) 542; *Roberston v. Chicago & E. R. Co.,* 146 Ind., 486; 45 N. E., 655; *Pasco v. Minneapolis Steel & M. Co.,* 105 Minn., 132; 117 N. W., 479; 18 L. R. A. (N. S.) 153; *Knutter v. N. Y. & N. J. Tel. Co.,* 67 N. J. Law, 646; 52 Atl., 565; 58 L. R. A., 808; *Railroad Co. v. Peterson,* 162 U. S., 346; 16 Sup. Ct., 843; 40 L. Ed., 994.

The rule laid down in *Brabham v. Postal Co.* has been reaffirmed in the following cases: *Martin v. Royster Guano Co.,* 72 S. C., 237; 51 S. E., 680; *Pagan v. So. Ry. Co.,* 78 S. C., 413; 59 S. E., 32; 13 Ann. Cas., 1105; *James v. Mfg. Co.,* 80 S. C., 232; 61 S. E., 391; *Goodman v. Tel. Co.,* 87 S. C., 449; 69 S. E., 1089; *Hunter v. Alderman,* 89 S. C., 502; 71 S. E., 1082; *Gibbes v. Phosp. Co.,* 93 S. C., 193; 76 S. E., 464; *Tucker v. Mills,* 76 S. C., 539; 57 S. E., 626; 121 Am. St. Rep., 957. *Stanton v. Corporation.* 97 S. C., 403; 81 S. E., 660; *Lyon v. Railroad Co.,* 77 S. C., 328; 58 S. E., 12.

In *Wilson v. Railroad Co.,* 51 S. C., 79; 28 S. E., 91, the present Chief Justice thus, for the Court, declares the rule:

"When persons are employed in a common undertaking, all sustain toward each other the relation of fellow servants when exercising only the ordinary duties of their employment, even when they cannot see each other, or are working apart and not in conjunction. But if an employee sustains an injury through the negligence of a co-employee, while such co-employee is performing the duties of the master, the master cannot defeat his recovery on the ground that they are fellow servants."

In *Gunter v. Graniteville Mfg. Co.,* 18 S. C., 262; 44 Am. Rep., 573, the Court declares:

"The true test is whether the person in question is employed to do any of the duties of the master; if so, then he cannot be regarded as a fellow servant or co-laborer with the operatives, but is the representative of the master, and any negligence on his part in the performance of the duty of the master thus delegated to him must be regarded as the negligence of the master."

"The question is as to the nature of the duty, not as to the rank or grade of the person employed to perform it. Is it a duty which the master owes to his servants?" *Calvo v. Railroad Co.,* 23 S. C., 529; 55 Am. Rep., 28.

"Whether the employee whose negligence caused the injury was or was not a vice principal is determined by the nature of the functions which he was, as a matter of fact, discharging at the time when the injury was received, and not by the appellation by which he was designated." 4 Labatt (2d. Ed.) § 1434.

"In other words, the function of giving directions as to the proper manner of performing the work is not one of those absolute personal functions for the careful discharge of which a master is responsible, whatever agents he may employ." 4 Labatt (2d. Ed.) § 1442.

"Servants employed at the same kind of work, except that one has authority to give directions to the other as to the manner of doing the work, are fellow servants." 4 Labatt (2d. Ed.) § 1445, note, page 4175, citing *Postal Co. v. Hulsey,* 115 Ala., 193; 22 South., 854.

"The practical effect of this theory is that the defense of common employment is excluded or allowed to prevail, according as the delinquency in question was or was not a breach of what the law regards as a direct, personal, and absolute obligation, from which nothing but performance can relieve the master." 4 Labat (2nd Ed.) § 1479.

"If the act causing the injury is committed while the employee, however high his grade may be in other matters, is merely carrying out the details of the work, he is in respect to that act only a fellow for whose negligence the master is not liable to other servants." 18 R. C. L. 747.

"If the delinquency of the foreman or boss consists in one of the non-delegable duties of the employer, the latter will be deemed liable, whereas if the fault is merely in respect of an act of service, as it is termed, no liability attached by reason thereof." 18 R. C. L. 753.

"It is the duty to be performed, and not the name of the officer, that determines this question." Mr. Justice Fraser, in *Halsall v. Railroad Co.,* 96 S. C. 308, 80 S. E. 467.

10—S. C. 117

"It is the nature of the duty, and not the right to control, that governs this case."    Mr. Justice Fraser, in *Williams v. Railroad Co.,* 105 S. C., 468; 90 S. E., 27.

"The fact that the pit boss was for some purposes a vice principal did not necessarily make him a vice principal in everything that he did.    If he acted as an operatve only, the liability of his master for his acts was not other or different from that which would result with reference to the acts of any other operative."    *Cavanaugh v. Centerville Co.,* 131 Iowa, 700; 109 N. W., 303; 7 L. R. A., (N. S.), 907.

"One servant, however, may be, in relation to a co-servant, a vice principal in one relation and a fellow servant in another, depending on the particular duties he is discharging at the time."    *Norfolk & W. R. Co. v. Phillips,* 100 Va., 362; 41 S. E., 726.

In *Marks v. Railroad Co.,* 146 N. Y., 181; 40 N. E., 782, it is held in substance that the moment that an employee, not vice principal for general purposes, but who has authority to hire an emergency assistant, has completed such a hiring, and after having resumed his place as servant, enters upon the performance of his work as such, he ceases to represent the master, and becomes a fellow servant of the assistant for all purposes.

The responsibility of a master for the performance by a servant of the master's non-delegable duties is based upon the principal of "Qui facit per alium, facit per se," whether those duties be owing to a servant or a stranger; his responsibility to a stranger for the servant's delict in delegable duties is based upon the principle of respondeat superior, which in turn finds its support, not in substantive law, but in public policy.    Public policy does not demand or justify that the master should be so responsible to an injured servant for a breach of the delegable duties by a fellow servant.    He may sue the offending servant, but to make the master liable, unless that servant is taking the

place of the master, is contrary to reason and justice, and has therefore no support in public policy.

Fortunately, for the sake of this great desideratum in the law, the principle has been definitely and certainly fixed in this State; the only difficulty remaining being the application of it to the facts of this particular case. If Atkins in the tortious act was performing, or attempting to perform, one of the absolute, non-delegable duties which the defendant as master owed the plaintiff as servant, he was a vice principal, the representative of the master, and his negligence was the negligence of the defendant, for the consequences of which it must respond; if, on the other hand, the defendant as master had fully complied with the several obligations due by it to the plaintiff as servant, and the tortious act of Atkins was a personal act of negligence on his part, a breach of his obligations to the common master, a delinquency in his service, a default in the details of the work, a misuse of the safe places or instrumentalities supplied by the defendant, while engaged with the injured servant in the common undertaking immediately in hand, Atkins and Leopard were, pro hac vice, fellow servants, and the defendant would not be responsible for the consequences of Atkins' carelessness.

The question may be determined upon the principle of exclusion, by defining in the first place the absolute, non-delegable duties of the master, and then by demonstrating that the act of Atkins was not committed in the furtherance of any of them. The terms "non-delegable" and "non-assignable" applied to the absolute duties of the master, do not happily convey the idea intended, for in a sense every duty of the master is assignable or delegable, and in the case of a corporation necessarily so; the simple term "absolute" more accurately defines a duty that is continuous upon the master, one which he cannot relieve himself of by delegating or assigning its performance to a servant.

The absolute duties of a master in the sense indicated are: To provide a reasonably safe place for the servant to work, and exercise reasonable care in maintaining it in that condition; to provide reasonably sound, safe, and suitable instrumentalities for the servant to work with, and to exercise reasonable care in maintaining them in that condition; to exercise reasonable care in the selection of competent servants and a sufficient number for the work in hand; to exercise reasonable care in the supervision of the servants and in the inspection of the place and instrumentalities provided; to promulgate rules reasonably adequate for the proper conduct of the work in hand; to warn the servant of concealed and unknown dangers; to warn inexperienced servants of the dangers of the work; and others which may have escaped attention.

The facts show, not only that not a single one of these duties, or any other that may be recalled, was neglected by the defendant as master, but, what is the nerve of the controversy, not a single one of them was delegated to Atkins, and, conclusively, that the act which he committed was not in the furtherance of any one of them.

The only contention that could possibly arise is that the act of Atkins made the plaintiff's place of work unsafe, and that, therefore, constituted a breach of the master's duty in this regard. If that position were tenable, the immunity of a master from liability on account of the negligence of a fellow servant of the injured servant is a myth; for every act of a fellow servant causing injury to another renders the place of work for the time being unsafe. This contention is answered by the following authorities:

"The duty devolving upon the master to provide the servants a safe place to work, in the first instance, is one which cannot be delegated so as to relieve the master from liability on the ground that the negligence was the act of a fellow servant. So the master cannot escape liability by relying on the fellow servant rule when the place of work

afterwards becomes unsafe, and he knew, or ought to have known, of its unsafe condition and failed to remedy it within a reasonable time when a servant is injured by reason thereof. This rule does not extend, however, to negligent acts of a servant making a place unsafe, nor when the negligence relates to the details of arrangement and execution in keeping a safe place." 26 Cyc., 1322.

This Court in *Jenkins v. Railroad Co.,* 39 S. C., 507; 18 S. E., 182; 39 Am. St. Rep., 750, quotes the following with approval, as the "statement of a learned Judge" *Howard v. Denver & R. G. Ry. Co.* [C. C.] 26 Fed., 837) :

"So far as the place and machinery, both were safe. There is no pretense that the track was not in good order, or that the engines and other implements for the movement or control of the train were not sufficient. It will not do to say that because Ryan's engine was in the way and collided with decedent's train the track was not clear, and therefore the master had failed in his duty of providing a 'safe place' for the employees to work in and upon. The negligent use by one employee of perfectly safe machinery will seldom be adjudged a breach of the master's duty of providing a safe place for the employees. Such a construction would make any negligent misplacement of a switch, any collision of trains, even any negligent dropping of tools about a factory, a breach of the duty of providing a 'safe place.' The true idea is that the place and the instruments must in themselves be safe, for this is what the master's duty fairly compels and not that the master must see that negligent handling by an emplyee of the machinery shall not create danger," etc.

The place was safe, the appliances were safe; the negligence consisted in the act of Atkins turing the cylinder without giving notice of his purpose to Leopard.

"The failure of an employee, in performing the work which he is directed to do, to give a fellow employee warning when doing an act which may endanger him, is not a

fault attributable to the employer." 18 R. C. L., 714, citing *Desautels v. Cloutier,* 189 Mass., 349; 75 N. E., 703; 1 L. R. A.. (N. S.), 669; 109 Am. St. Rep., 641.

Illustrations of the application of the principle demonstrate the correctness of the Circuit Judge's ruling.

In *Wilson v. Chemical Co.,* 78 S. C., 381; 58 S. C., 1019, the deceased was one of a gang of laborers under a foreman named Sanders, engaged in shoveling rock loaded from the space in front of a door, through which rock loaded in cars was being unloaded into a building. Robinson was foreman of a gang pushing cars up to the door. The injury occurred from the failure to give notice of the approach of the car. The Court held:

"Sam Robinson was foreman of the gang pushing the car. He and Sanders were nothing more than gang foremen, both working under the orders of Happolt, who was the boss in charge of all the laborers, referred to in the testimony. These foremen had no power to hire laborers, provide machinery, or the place of labor, or to do any duty imposed by law on the master. They were therefore fellow servants of the deceased, and the master is not responsible for their negligence."

In *Goodman v. Telegraph Co.,* 87 S. C., 449; 69 S. E., 1089, the injured servant was one of a telegraph line force engaged in stringing wires and working under a foreman named Melon, who had the authority of not only directing the squad, but of employing and discharging hands. The plaintiff was required to climb the pole and fasten the wire to the bracket; the line was then to be pulled tight by the men on the ground, but not until the plaintiff had notified them that it had been tied. Without notice from or warning to the plaintiff the wire was tightened prematurely, and he was jerked to the ground. The record is not entirely clear whether the foreman pulled the wire or gave the order therefor; but as the case went off upon the ground that the plaintiff and foreman were fellow servants, it is

assumed that his negligent act was the cause of the injury. The Court after quoting from 26 Cyc., 1364, declares

"At the time of the injury the duties of Melon were in no way connected with the employment and discharging of servants, but he was merely discharging the duties of a fellow servant, as foreman of the gang."

In *Gibbes v. Phosphate Co.,* 93 S. C., 193; 76 S. E., 464, the plaintiff was injured by the fall of a pile of fertilizer sacks, which he alleged were negligently stacked up, not "tied," as they should have been, and that he was negligently ordered to work in this unsafe place by the foreman. It appeared that the offending servant was not only a foreman, but a common laborer along with the plaintiff. The Court held that the foreman was not a vice principal, and that the case was ruled by the Brabham and Martin cases, which established the relation of fellow servants between the plaintiff and the foreman. The distinction is clearly illustrated by the case of *Leopard v. Laurens Cotton Mills,* 81 S. C., 15; 61 S. E., 1029. There the plaintiff, a youth of tender years, was put to work in a cotton mill under a specific agreement with his father that he would not be put to work in a dangerous place. Independently of that agreement, it was the duty of the master to warn the inexperienced youth of the dangers of the work assigned. him; and, when the master delegated that duty to a subordinate, it was the delegation of a duty which the master owed the servant, non-delegable, and the subordinate was the immediate representative of the master, for whose negligence the master was responsible.

In *Koon v. Railroad Co.,* 69 S. C., 101; 48 S. E., 86, the distinction is also clearly illustrated. There the negligence alleged was a defective appliance which was selected by one otherwise a fellow servant of the injured servant. The Court held that it was a non-delegable duty on the part of the master to exercise care in the selection of reasonably safe appliances, and that the servant who was charged

with this duty was pro hac vice the representative of the master.

The case of *Hunter v. Alderman,* 89 S. C., 502; 71 S. E., 1082, is readily distinguishable from the case at bar. There the plaintiff was assured by the manager of the saw mill that the mill would not run that day. He was down in the saw pit, engaged in sharpening and adjusting the saw. The foreman of a gang of laborers, who had authority to employ and discharge and to direct the fireman, when to blow the whistle, ordered him to do so. The valve was opened, and the machinery operating the saw set in motion, causing the injury. The foreman was not engaged with the plaintiff in his work. The Court held that

"If it be true that the master assumed this special obligation to keep the place of labor safe by not starting the machinery, and it was started by the direction of a person who was intrusted by the master with the authority to require an act to be done which would start the machinery, such act would be the act of the master, and such person the representative of the master in that particular act."

In the case of *Alaska Mining Co. v. Whelan,* 168 U. S., 86; 18 Sup. Ct., 40; 42 L. Ed., 390, the injured servant was one of a squad engaged in breaking rock and preparing them to go in a chute, under the direction and control of a foreman. He was directed to break rock over one of the chutes, and while so engaged the foreman drew the gate at the mouth of the chute, causing the rock at the head of the chute to be suddenly drawn in, carrying the plaintiff with it, a distance of 30 feet, covering him with rock and debris, thereby greatly injuring him. The Court directed a verdict for the defendant, holding:

"Finley [the foreman] was not a vice principal or representative of the corporation. He was not the general manager of its business, or the superintendent of any department of that business. But he was merely the foreman or boss of the particular gang of men to which the plaintiff

belonged.   Whether he had or had not authority to engage and discharge the men under him is immaterial.   Even if he had such authority, he was none the less a fellow servant with them, employed in the same department or business, and under a common head.   There was no evidence that he was an unsuitable person for his place, or that the machinery was imperfect or defective for its purpose.   The negligence, if any, was his own negligence in using the machinery or in giving orders to the men."

To the same effect is *Central R. C. v. Keegan,* 160 U. S., 259; 16 Sup. Ct., 269; 40 L. Ed., 418.