13484

BREWER v. BROOKLYN COOPERAGE CO.

(166 S. E., 85)

*Messrs. Epps & Levy,* for appellants,

*Messrs. Reynolds & Reynolds,* for respondent,

October 5, 1932.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, by Murray Brewer, as plaintiff, against the defendant, Brooklyn Cooperage Company, commenced in

the Court of Common Pleas for Sumter County, May 16, 1930, is a suit for recovery of damages for personal injuries sustained by the plaintiff, alleged to have been caused by the negligence, carelessness, and willfulness of the defendant, while the plaintiff was employed as a laborer by the defendant in unloading logs from a crane, it being alleged "that it was plaintiff's duty, when logs were swung on the platform, where the plaintiff was stationed, to release the hooks from their hold on the log, which had been lifted on the platform," and that his alleged injury occurred while performing such duty; that as he leaned over the log, in the act of releasing the hooks from the log, "the defendant, through its agents and servants, without any warning to the plaintiff, and with an utter and total disregard for the safety of the plaintiff, negligently, recklessly, willfully and wantonly attempted to swing said hooks from the platform, thereby causing the hooks to slip loose from the other end of the log and strike plaintiff violently in the face" and caused the alleged injuries. The defendant, in its answer, admitted the formal allegations of the complaint, and also admitted that the plaintiff was injured while in the employment of the defendant engaged in the work alleged, and that it was his duty to release the hooks from the logs, but denied all other material allegations of the complaint, and specifically denied "that it was the defendant's duty or custom to give the workmen any warning," and alleged that "everything was in plain, open view and that it was the duty of the plaintiff to keep out of the way of the hooks referred to in the complaint," and alleged that the plaintiff was "well aware of the fact that all of the work about the defendant's plant was more or less dangerous, as a matter of necessity and it was the plaintiff's duty to keep out of the way of the hooks." The defendant further alleged that it was the "duty of the plaintiff and his fellow servants to handle the complete unloading of the logs, including whatever warning they should give each other," and, also, set up the plea of contributory neg-

ligence, alleging that the accident was caused by the plaintiff's negligence "in standing too near the hooks after the same had been released; in not heeding the warning given, and getting out of the way of the hooks; in not standing far enough away so that the said hooks would not strike him and in not keeping a proper lookout on said occasion." The defendant, further, interposed the plea of assumption of risks, alleging that the plaintiff assumed all of the risks incident to his employment.

The case was tried at the October, 1931, term of said Court before his Honor, Judge C. J. Ramage, and a jury, resulting in a verdict for the plaintiff in the sum of $725 00, and from the judgment entered thereon the defendant has appealed to this Court.

Appellant presents a number of exceptions, but, as appears from the brief, it is the contention of the appellant that the errors imputed to the trial Judge raise only five questions.

Exceptions 1 and 2 impute error to his Honor in refusing to grant defendant's motion for a nonsuit and motion for direction of a verdict. As contended by appellant, the question here is: Was there any evidence of actual negligence to go to the jury? The trial Judge directed a verdict as to punitive damages and, therefore, that issue is not before us. As to actual damages, a careful reading of the transcript convinces us that there was evidence of negligence to go to the jury, and that the trial Judge committed no error in overruling defendant's motion for a nonsuit and direction of a verdict. There were five men engaged in hauling the logs in question. Mr. Sutton, one of the men, referred to as the engineer, was operating the crane or derrick, and was in a position to see what the other men were doing. Two of the men were on the flat car, whose duty it was to fasten the hooks into the logs so that they could be carried from the flat car, by means of the crane, over onto the platform, where the plaintiff and one other person were stationed for the purpose of taking the hooks loose from each log as it was

placed thereon, the plaintiff loosing the hooks from one end of the log and the other person loosing the hooks from the other end of the log, so that the crane, with the attachments connected therewith, could be turned, by the engineer, in the direction of the flat car for the purpose of getting another log. The plaintiff testified, in this connection, as follows:

"Q. At the time the accident occurred, what were you doing? A. Trying to pull the hook out, I had both hands trying to pull the hook out of the log and Claude Sutton started the derrick up and threw the hook around and hit me in the jaw when I was pulling the hook out of the log.

"Q. Where did it hit you? A. Right there (indicating).

"Q. Come down here and show the jury. A. This point of the hook stuck clean through my jaw.

"Q. Well, what happened then? A. I was knocked cold, didn't know anything until I was out at the office. I don't know how long they had me there until I came to my mind.

"Q. Did they take you to a doctor? A. Yes, sir, to Dr. Sidney Burgess.

"Q. He dressed it? A. Yes, sir, and sent me back home.

"Q. He sent you home? A. Yes, sir.

"Q. Who looked after you after that? A. Irvin Timmons. He kept me up what time I was hurt.

"Q. They didn't send you to a hospital? A. No, sir.

"Q. Did the doctor come to see you? A. Yes, sir, one time and no more.

"Q. Only come once? A. Yes, sir.

"Q. Did you have any way of making a living during that time? A. No, sir, I did not. I had to get some of my friends to come and cut wood for my wife—

"Mr. Epps: We object to that, he is testifying about having got people to cut wood for him.

"The Court: Yes, sir, that is wrong, strike it out.

"By Mr. Reynolds:

"Q. Could you use your mouth at all to do any eating and chewing? A. No, sir, I couldn't. I had to use a glass tube,

just dip soup or milk, and I couldn't get but very little of that down.

"Q. How long was it before you could eat? A. About two months before I got to eating good.

"Q. In regard to your eyes, did it have any effect on your eyes? A. Yes, sir, I was so sore for a while I could not use my left eye.

"Q. Has that eye got all right? A. It hurts some every once in a while now.

"Q. But you can see out of it? A. Yes, sir, but I get pains in the right side of my eye and in my head.

"Q. How often do the pains in your head affect you? A. Every day or two.

"Q. As to the wound in the mouth and jaw, that has healed all right? A. I don't know whether it has or not but every night when I go to bed and get up next morning, the pus inside of my jaw is all over the pillow the next morning.

"Q. Can you see the wound? A. No, sir.

"Q. Where does it affect you, in this bone here? A. Yes, sir.

"Q. But it has all healed up pretty good? A. Yes, sir.

"Q. And except for the pain in the head now and then you have gotten all right? A. Yes, sir."

There was testimony offered by the defendant to the effect that the person on the platform with the plaintiff (this person did not testify in the case and was not present at the trial) gave a signal to Mr. Sutton, the engineer, to the effect that the hooks were loose and to go ahead, and, acting on such signal, that the engineer, Mr. Sutton, put the crane in motion, and that this caused the plaintiff's injury; and it is the contention of appellant that the person giving such signal was a fellow servant with the plaintiff, and, therefore, the injury having been caused by the negligence of a fellow servant, the plaintiff could not recover. This was probably one inference to be drawn from

the testimony, but, in our opinion, more than one reasonable inference can be drawn from the evidence as to whose negligence was the cause of the plaintiff's injury. It is the further contention of appellant that even if the injury to plaintiff was caused by the negligence of Mr. Sutton, the engineer in charge of the crane, that the plaintiff still could not recover for the reason that he, too, was a fellow servant with the plaintiff. There was testimony on behalf of the plaintiff to the effect that his injury was caused by the negligence of Mr. Sutton, the engineer; but it certainly does not appear conclusively that Mr. Sutton was a fellow servant. Considering the testimony as a whole, we are satisfied that more than one reasonable inference can be drawn therefrom as to whether or not Sutton was a fellow servant and, therefore, an issue arose for the jury. In this connection we call attention to testimony on the part of the plaintiff to the effect that the plaintiff was wholly inexperienced in the work in which he was engaged and that he did not appreciate the dangers connected with the work. It further appears from the plaintiff's testimony that the defendant, through the said Mr. Sutton, first directed the plaintiff to perform other work at another place, but decided that it was too dangerous, and the plaintiff being wholly inexperienced, instructed the plaintiff to perform the work at the place where he was injured, having led the plaintiff to believe there was no danger connected with the work at the last-named placed, that is, lulled him into a sense of security, and the defendant failed to give the plaintiff any instructions regarding the dangers connected with the work the defendant ordered him to do, and in which the plaintiff was engaged at the time he was injured, and the plaintiff did not appreciate the dangers connected therewith. It also appears from the testimony that the plaintiff was injured the same day that he commenced to work for the defendant; in fact, just a few hours after he started to work. In connection herewith we quote the following testimony of the plaintiff:

"Q. After you returned to this country did you get employment with the Brooklyn Cooperage Company? A. You mean right after?

"Q. No, sir, I mean after you got back. A. No, sir, it was a few weeks after I came back.

"Q. When were you employed by them? A. In the Fall of 1929.

"Q. What position were you given, what was your work? A. He started putting me to checking cars down at the scaffold.

"Q. Who was that? A. Claude Sutton.

"Q. Was he working for the Brooklyn Cooperage Company? A. Yes, sir, running a derrick, and he wanted me to check cars and he told me I, was liable to get hurt and I didn't know how to do that and he told me to go on the far end of the scaffold and tell the colored fellow to come down there. * * *

"Q. You said Mr. Claude Sutton told you you were liable to get hurt? A. He didn't tell me I was liable to get hurt on the scaffold but about checking, checking the cars down to the scaffold, he said he would not put me to that work because I was liable to get hurt and he told me then to get up on the scaffold and tell the colored fellow to come down there and check logs and told me to unhook the logs."

One inference to be drawn from this testimony is that Mr. Sutton was acting in a representative capacity. He was representing the master in engaging the plaintiff to work and directing him where to work. At least, this is one inference to be drawn from the testimony. It further appears that Mr. Sutton was in a position to see the plaintiff at the time he started the crane in motion, which act resulted in plaintiff's injury. As the representative of the master it was certainly his duty, when he selected a place for the plaintiff to work and put him to work, to give to the plaintiff full instructions, not only as to the nature of the work but also as to the dangers connected therewith,

especially since he knew the plaintiff was inexperienced as to this work and knew, or should have known, that the plaintiff was ignorant of the dangers connected therewith. This Mr. Sutton did not do, if plaintiff's testimony is to be believed. It is not at all improbable that such failure caused the injury the plaintiff complains of. Exceptions 1 and 2 will have to be overruled.

The next issue presented is in connection with appellant's third exception, it being the contention of the appellant that his Honor erred in charging the jury in accordance with the first request of the plaintiff, as follows: "I charge you that among other duties, it is the duty of the master to provide the servant a reasonably safe place to work, and to see that it is kept safe; to warn the servant of any dangers, and before putting any appliances into operation, which are dangerous, to warn all servants of same, who may be in a dangerous position, or are seen in a dangerous position. This being erroneous (a) it was a charge on the facts to say that it is the duty of the master to warn all servants who may be in a dangerous position, or seen in such position, before putting into operation any appliances which are dangerous. (b) The law does not require the master to warn the servant of any and all dangers, but only such as are latent and not obvious. (c) It is not the duty of the master to warn all servants who may be in a dangerous position, before putting into operation any appliances."

Appellant concedes that it is the duty of the master to furnish safe and suitable appliances and to see that they are kept in proper repair, also to provide a safe place in which to work, further to employ a sufficient number of servants to perform the labors of their employment, and to select competent servants; but appellant contends that the trial Judge, in charging the plaintiff's request, which is quoted above, "goes beyond this and charges the jury that it is the duty of the master to warn the servant of any dangers and that before putting into operation any appliances which are dan-

generous, he must warn not only those servants who are seen in a dangerous position, but those *who may be in a dangerous position.*" (This we quote from appellant's brief; italics added.)

In the first place, in our opinion, appellant places the wrong construction upon the language used in the plaintiff's request to charge. By reference to the wording of the request, which his Honor charged, and which was quoted in stating the exception under consideration, it will be seen that the same was used in the following order: " *   *   * And before putting any appliances into operation, which are dangerous, to warn all servants of the same, who may be in a dangerous position, or seen in a dangerous position."

In our opinion, the latter part of the clause, "or seen in a dangerous position," should be regarded as explanatory of the meaning intended to be expressed by the first part of the clause, notwithstanding the fact that "or" is used following the first part. Certainly, there could be no objection to the trial Judge charging the jury that it is the duty of the master, before putting any appliances into operation, which are dangerous, to warn all servants of the same, who are seen in a dangerous position. If it had been intended to convey to the jury the meaning appellant contends was intended, there would have been no sense in adding the latter part of the clause. Furthermore, although the appellant presented a number of requests to charge, which the trial Judge charged, no request was presented bearing directly on the matter now complained of by the appellant, notwithstanding the fact that full opportunity was given the appellant to do so. We are satisfied that the jury was not misled, and especially is this true when the entire charge is taken into consideration, and in this connection we call attention to the fact that the trial Judge specifically stated to the jury that they should take the charge as a whole. In instructing the jury on this line the trial Judge gave the jury the following instruction: "I will take up the request to

charge furnished by the plaintiff. You must take all of my charge together, the requests to charge and the general charge. The requests from both sides taken together with my general charge."

The exception must be overruled.

The next question involved in the appeal is stated by appellant in dealing with exceptions 4 and 5, as follows: Is the duty of giving warning a nondelegable duty of the master?

We are inclined to think that the plaintiff's requests on the charge of nondelegable duties, which his Honor charged, were not clear, but the law on this subject was made clear to the jury by his Honor in charging the jury at the close of his charge as follows:

"Persons employed in a common undertaking are fellow servants when exercising the ordinary duties of their employment, except where one performs the duties of the master. A person does not assume the risk, unless by the use of ordinary care he could have assumed it. The law imputes knowledge to a man under two conditions, one where he actually knows it, and the other, where by the exercise of ordinary care, and prudence, he could have known it. That is the same as if he knew it.

"Gentlemen, I have tried to cover this case. I am going to read from *Biggers v. Catawba Power Company*, 72 S. C., 269, 51 S. E., 882, 'It is the duty of the master to furnish safe and suitable machinery and appliances and see they are kept in proper repair; provide a safe place to work; employ a sufficient number of servants and select competent servants. When there is a failure to perform any of those duties, and a servant is injured as a direct and proximate result of such failure, it constitutes *prima facie* evidence of negligence on the part of the master. If it is necessary in order to conduct the work in a safe manner, for the master to employ servants to give notice of danger during the progress thereof, to other servants and injury results from

such failure, the master is liable for damages. But when the master employs competent servants to give notice of danger to other servants, they are fellow servants and he is not responsible for their negligence in failing to give notice of danger arising from the operation of the appliances, as this is one of the risks assumed by the servant. The servant likewise assumes the usual and ordinary risks incident to the operation of the machinery. But if the danger is latent or unusual, or the servant is youthful or the master knows that he is inexperienced, it is his duty to give warning of the danger.' "

Furthermore, under our view of the record, this question was not a proper question in the trial of the case in the lower Court. It did not arise under the pleadings or testimony. Appellant, in its answer, while admitting that it was the duty of the plaintiff to release the hooks from the logs, denied that it was the defendant's duty or *custom to give to the workmen any warning;* and the testimony in the case, as disclosed by the record, shows that it was not the custom of the defendant to give warning to its workmen; that no one was engaged by the defendant for that purpose and that no warning was given to the plaintiff. Exceptions 4 and 5, under which this question arises, must be overruled.

The fourth question involved in the appeal, to which appellant calls attention, is: Was Claude Sutton a fellow servant with the plaintiff and should the Court have so charged?

The exception under which this question arises is overruled for the reasons assigned by us in our consideration herein of the first question presented. As we view the testimony, it does not establish conclusively that Mr. Sutton was a fellow servant but, on the other hand, there was testimony which tended to show that Mr. Sutton, at the time in question, was acting as a representative of the master. To have charged as requested by the defendant would have been a charge on the facts. In this connection we call attention to the principle stated in the case of *Leopard v. Beaver Duck*

*Mills,* 117 S. C., 123, 108 S. E., 190, and authorities therein cited.

The first question presented for our consideration is: ■ Did the trial Judge err in charging the following request presented by the plaintiff: "I charge you further that where an injury is shown to have resulted from an unsafe place to work, a *prima facie* case of negligence is made out against the master, and he has the burden of exculpating himself."

It is the contention of appellant that in charging this request of the plaintiff his Honor charged upon the force and effect to be given the testimony and charged on the facts. We are unable to agree with appellant's contention. The rule stated in this request of the plaintiff, and charged by the trial Judge, is a recognized rule by our Courts in the trial of such cases. In this connection we call attention to the opinion written by Justice T. P. Cothran, as the organ of the Court, in the case of *Bunch et al. v. American Cigar Company,* 126 S. C., 324, 119 S. E., 828, and authorities therein cited.

All of the exceptions are overruled, and it is the judgment of this Court that the judgment of the Circuit Court be and is hereby affirmed.

MESSRS. JUSTICES STABLER and BONHAM concur.

MR. CHIEF JUSTICE BLEASE concurs in result.