## 10701

GRICE, ADMINISTRATRIX, v. HANN *ET AL*

(108 S. E. 195)

MASTER AND SERVANT—NEGLIGENCE OF EMPLOYEE IN CHARGE OF DREDGE HELD FOR JURY.—In an action for the death of an employee working on a dredge, where there was testimony that some of the machinery was old and defective, and that the place where the deceased was directed to work by one who was in charge of the dredge as the representative of the owner was unsafe, it was error to grant a nonsuit.

Before McIver, J., Richland, March, 1920. Reversed and new trial ordered.

Action by Maggie Grice, administratrix of the estate of James A. Grice, deceased, against Harry F. Hann and Grant Collins. From order of nonsuit as to the defendant Hann, the plaintiff appeals.

The complaint follows:

The plaintiff alleges:

(1)  That on the 28th day of September, A. D. 1918, James A. Grice, late of the county of Richland, State aforesaid, departed this life, intestate, and that by an order of the Probate Court in and for the County and State aforesaid, on or about the 14th day of April, 1919, the said Maggie Grice was duly appointed administratrix of the estate of James A. Grice, deceased, and as such is authorized and directed to bring this action for the benefit of herself and her children, who are Edwin Grice, Katie Grice, Inez Grice, Thomas Grice, James Grice, Jeannette Grice and Maggie Grice, and that plaintiff, Maggie Grice, the wife, and children as aforesaid are the only heirs at law of the said James A. Grice; that this action is brought for their benefit; that the said wife, Maggie Grice, and the said children were dependent upon the said James A. Grice for a livelihood.

(2)  That the defendant, Harry F. Hann, was and now is a contractor, doing business and maintaining an office therefor at Camp Jackson, in the County of Richland, State of South Carolina, and at the times hereinafter mentioned was engaged in operating a certain dredge by the name of Mary Mahone, used in dredging a certain creek, known as Gill creek, on or near the Childs place in the County and State aforesaid; that the defendant, Grant Collins, was in the employ of the defendant, Harry F. Hann, and as such was engaged as a watcher or lookout upon said dredge, whose duty it was to give signals to warn plaintiff's intestate and other employees of any danger in the operation of said derrick in said dredging.

(3)  That on or about 28th day of September, 1918, the plaintiff's intestate, James A. Grice, was in the employ of the defendant, Harry F. Hann, and as such was engaged as a mechanic; that while not engaged as a mechanic:

plaintiff's intestate was engaged as a laborer; that while engaged in the duties as a laborer for the defendant, Harry F. Hann, on said dredge known as the Mary Mahone, on or about the 28th day of September, 1918, the plaintiff's intestate was instructed by the defendant to go into the said creek for the purpose of placing a chain around a slippery log that had for some time slipped off the dredge bucket, each time it was brought out of the water, and in order that said log might be removed from said creek; and to reach said log plaintiff's intestate had to leave the dredge-boat and go upon the bank of said stream, and while going along the narrow ledge on the edge of the water and between the creek and the bank which rose up abruptly for about six or eight feet from the level of the water to the level of the ground above, and before plaintiff's intestate had arrived at said log, the defendant, without notice or warning to plaintiff's intestate, caused and permitted the said derrick to move said log to the bank of the creek where plaintiff was, striking plaintiff's intestate with said log, and thereby injuring and killing him; that the aforesaid injury to and death of plaintiff's intestate was directly due to and approximately caused by the joint and concurrent negligence, wantonness and willfulness of the defendants under the foregoing circumstances, conditions and relations of the parties in the following respects:

(A)  In failing to use and furnish plaintiff's intestate safe and suitable machinery and appliances: (1) In that the said machinery used for removal of logs from said creek did not have clamps or picks with which to hold the log so as to prevent it from falling on and killing plaintiff's intestate. (2) In not using chains to hold said log on the dredge bucket so as to prevent it from slipping and falling upon and killing plaintiff's intestate. (3) In failing to use grab-hooks or similar appliances for the removal of slippery logs from the water and putting same out upon the bank.

(B)  In failing to furnish plaintiff's intestate a safe place to work:  (1)  In that, after he was ordered by the defendant to the place where he received said injuries, the said derrick bucket and log was rapidly thrown over and upon plaintiff's intestate without warning and without giving him opportunity to escape.  (2)  In failing to use proper grabhooks, or similar appliances, and to chain and secure said slippery log to said derrick bucket before moving or throwing the same over to the place where said defend-- ants had directed plaintiff's intestate' to go, without warn- ing to him, and without giving him opportunity to escape.

(3)  In that there was not a plain and open view between the lever-man or foreman in charge of the dredging oper- ation and plaintiff's intestate, by reason of which said lever-man could not see plaintiff's intestate, whom he had sent to chain said log, and as a result of which plaintiff's intestate was struck and killed by the log as it was thrown over on the bank.

(C)  In failing to make reasonable inspection of said place, machinery, and appliances, as a reasonable inspection would have revealed the defects in said place, machinery, and appliances.

(D)  In failing to notify plaintiff's intestate of the dangers, as aforesaid, of which he was unconscious.

(4)  That by reason of the joint and concurrent negli- gence, willfulness and wantonness of the defendant, as aforesaid, the plaintiff  as administratrix of the estate of James A. Grice, deceased, has been damaged in the sum of $50,000, for which amount she asks judgment and costs.

The reasons assigned by the presiding Judge in granting the nonsuit were as follows:

The Court:  Gentlemen, this is a motion for a nonsuit. I have given this matter considerable and careful consid-- eration, and have reviewed it in my mind and had the ste- nographer to look up certain of the evidence.  I cannot see that there is anything to go to this jury.  The parties

litigant are held to the allegations of the pleadings. That makes the issue between the parties.

Now the allegations of the pleadings are that the injury was caused by the negligence of the defendant, Grant Collins, combining and concurring with the negligence of the master himself, who was Mr. Hann. And Grant Collins admits in his answer his negligence, his liability, and joins in the prayer of the complaint for relief. Of course I cannot grant a nonsuit against him.

The testimony all goes to show that Mr. Chitwood, the man in charge, the representative of the master, Hann was not there, and that, if there was any negligence on the part of the master that resulted in this accident, it was negigence of Ward. Mr. Chitwood, who was in charge of the whole work, and Ward himself in answer to my questions, said that Grice was in charge of the work generally in the absence of Mr. Chitwood, but that he was not to interfere with Mr. Ward in the management of the machinery part of the work. And Mr. Chitwood, the man in charge, who assigned these various duties, said, in answer to my question, that, under the employment of Grice he was not subject to order of Ward, and he did not have to obey his instructions, or his directions, or his orders, but that he was merely expected, while he was not engaged in work he was actually employed to do, to render such assistance as he might. I cannot see that he could be anything more than a fellow servant with Ward. He was in charge generally, under the testimony, of the whole work when Chitwood was not there. Of course if the injury was the result of negligence on part of a fellow servant, under the law he would not be entitled to recover, and do not see how Ward could be more than a fellow servant, if he was not even under Grice.

Then, too, all the testimony on the part of the operators of this machine was that Mr. Grice was an experienced man, perhaps the most experienced of the whole crowd

there; that he undertook to do these things because he understood it better; that he had engaged in this kind of work; that he knew what it was; and I cannot see why, under the law, there is not an assumption of risk naturally incident to the doing of the work he was employed to do.

Under those circumstances, I cannot see how the plaintiff has made out his case. It seems to me that he has one theory in the complaint and another theory in the testimony The theory in the complaint was that Grant Collins was negligent, but certainly that is not the theory of the testimony.

I am obliged to grant a nonsuit to Harry Hann. Of course, if the plaintiff wishes. to proceed against Collins under his admission in his answer, I think that they would be entitled to do so.

The exceptions for appeal were as follows:

That the presiding Judge erred in ruling that there was no testimony to go to the jury and granting the defendant Hann's motion for a nonsuit, and in holding:

(1) That under the testimony in the absence of Chitwood, who was in charge of the whole work, Grice (plaintiff's intestate) was in charge of the work generally, but not to interfere with Ward in the management of the machinery part of the work, and was a fellow servant of Ward, if not his superior. While he should have held from the undisputed testimony: (1) That Grice, the plaintiff's intestate, was employed as machinist, but when not engaged as machinist it was his duty to help under Ward's (the dredgor's) direction, in tying logs to the dredge bucket, and so to aid in the dredging operation. (2) That Ward, the dredger, was in complete charge and control of the operation of the dredge, and as such was the representative of the master, Hann, in such operations, and was not subject to the orders or direction of Grice, and was not a fellow servant with Grice in such operation of

the dredge. (3) That as such representative of the Master, Ward had the right to call on Grice to tie the log in question on the dredge bucket, and that Ward and Grice were not fellow servants. (4) That there was no evidence of contributory negligence on the part of Grice. (5) That Ward as a representative of the master, Hann, was negligent in failing to keep the way safe for Grice, by operating the dredge and throwing the log in question swiftly upon the bank along the edge of the ditch and striking Grice therewith knowing that Grice had set out to chain the log, and was on the bank in a position where he would likely be struck and injured if the dredge were operated and the log thrown to the bank while he was there in response to Ward's direction and request, and without giving him warning and opportunity for escape. (6) That Ward, the representative of the master, having directed Grice to chain said log, and having brought the log to the surface of the water, was negligent in failing to keep the dredge bucket and log stationary until Grice could chain it to the bucket, and in throwing the same over to the place where he had directed Grice to go, without warning to him or giving him opportunity for escape.

(2) That his Honor erred in not holding that there was evidence to go to the jury upon the question of negligence of the master in failing to furnish safe and suitable machinery and appliances for the removal of logs from the ditch in the dredging operation, and which, if furnished, would have prevented the accident, and in not refusing the motion for nonsuit.

(3) In not holding that there was sufficient evidence to go to the jury, and in not submitting same to the jury upon the following questions: (1) That Grice was employed as machinist, and when not employed as machinist was employed to help generally about the work, and that it was his duty to help under Ward's direction in the tying of logs to the dredge bucket, and that Ward and Grice were

not fellow servants in the operation of the dredge. (2) That Ward was in complete control and charge of the dredging operation, and was the representative of the master, Hann, therein, and was not under Grice, nor subject to his orders, and that Ward and Grice were not fellow esrvants in the operation of the dredge. (3) That Ward was a representative of the master, had the right to call on Grice to tie the log in question to the dredge bucket, and in so doing the relation of Grice and Ward was not that of a fellow servant. (4) That the injury to Grice was caused by the negligence of Ward, the representative of the master, in throwing said log towards and upon Grice without warning or opportunity of escape, and, while Grice was in a position where he had gone under the direction of Ward, and also by the negligence of the defendant, Collins, in not warning Grice of the approach of the bucket, and in not warning Ward not to throw the log over upon Grice. (5) If there was any evidence from which the contributory negligence of Grice might be inferred, that question should have been submitted to the jury. (6) That it was the duty of Collins to give warning to both Grice and Ward, he being in a position to see the danger to Grice when Ward could not, and that he was negligent in not so doing.

(4) That his Honor erred in holding that Grice, under the circumstances disclosed by the evidence, assumed the risk of Ward's throwing the log over upon him as an incident of his work, whereas he should have held that, Ward having directed Grice to go to the place where he was hurt, Grice had the right to assume, and act upon the assumption, that Ward would not render the place whither he had sent him unsafe for the operation of the dredge and bucket, without ample notice or warning to him and opportunity for him to get out of the way.

(5) That his Honor erred in not holding that the question of assumption of risk, under the facts and circum-

stances disclosed by the testimony, was for the jury, and in not submitting such question to them, and overruling the motion for nonsuit.

(6) That his Honor erred in holding that there was one theory of the case in the pleadings and another in the testimony, and that there was no evidence of negligence of the defendant, Grant Collins, in failing to give warning to both Ward and Grice, whereas he should have held that the negligence of Grant Collins in failing to give warning, combined with the negligence of Ward, the representative of the master, in operating the dredge and throwing the log over and upon the said Grice, under the circumstances disclosed by the testimony, was the direct and proximate cause of the injury and death of Grice, for which the master was liable, and in not overruling the motion for a nonsuit.

(7) That his Honor erred in not holding that there was evidence of a joint and concurrent negligence of Ward and Collins, under the circumstances disclosed by the testimony, and in not submitting the question to the jury, and overruling the motion for a nonsuit.

(8) That his Honor erred in not holding that the defendant, Collins, having by his answer admitted his negligence, that there was sufficient evidence of the negligence of Ward, as a representative of the master, combining and concurring with the admitted negligence of Collins as a proximate cause of the injury, to carry the question of joint and concurrent negligence of the defendants to the jury and in not submitting the same to the jury, and overruling the motion for a nonsuit.

(9) That his Honor erred in not holding that, although under the general employment Grice did not have to obey the orders or directons of Ward to go out and tie the logs, having volunteered to do so when so called on by Ward, Grice placed himself in the position of acting under the direction of the representative of the master, Ward, and recognized the authority of Ward to so direct him, and was

entitled to have the place to which he was directed to go by the master's representative kept safe while he carried out the directions of the representative, and was not guilty of contributory negligence in so doing, and is entitled to recover for the negligence of the master or his representative in failing to keep the same safe, and thereby causing his injury and death.

(10) That his Honor erred in not holding that if the master put plaintiff's intestate to work where he got hurt, and failed to keep the place safe, by reason of which he received the injury causing his death, the issue of fellow servant does not enter into the case, and that there was evidence upon this point, and in not overruling the motion for a nonsuit.

(11) That his Honor erred in not holding that there was evidence to go to the jury of the negligence of the master in failing to provide a safe place for Grice to work, and that under said evidence the master was responsible if injury resulted to the servant, notwithstanding the negligence of a fellow servant might have contributed to the injury as a proximate cause.

*Messrs. Halcott P. Green* and *John K. Hamblin,* for appellant, cite: *Where representative of master assumed obligation of keeping machinery from starting, the starting of it is negligence for which the master is liable*: 89 S. C., 502-507. *Where master places servants under control of another, that other is representative of the master and master is liable for his negligence*: 95 S. C., 138; 102 S. C., 510; 77 S. C., 432; 70 S. C., 470; 112 S. C., 177; 113 S. C., 139. *Test as to fellow servants*: 71 S. C., 53. *"Safe place" is ordinarily a question for the jury*: 112 S. C., 448. *Where representative of master put plaintiff to work and failed to keep place safe, issue of fellow servant does not arise*: 111 S. C., 430; 112 S. C., 77; 111 S. C., 514. *Recovery may be had for negligence of master and fellow servant*: 91 S. C., 127; 92 S. C., 528. *Assump-*

*tion of risk:* 112 S. C., 541; 112 S. C., 177. *Servant obeying instructions of representative of master is not guilty of contributory negligence even though he disobey rule of master:* 68 S. C., 55; 73 S. C., 503; 114 S. C., 22; 102 S. C., 280; 55 S. C., 101; 68 S. C., 55; 102 S. C., 409; 81 S. C., 524; 86 S. C., 235; 84 S. C., 287. *Error to grant a nonsuit where there is evidence from which more than one conclusion can be drawn:* 92 S. C., 528; 103 S. C., 421; 107 S. C., 523; 75 S. C., 523; 84 S. C., 388; 77 S. C., 432; 111 S. C., 434; 66 S. C., 482; 111 S. C., 514; 112 S. C., 545. *If a stranger works voluntarily upon request of a representative of the master it is duty of master to provide a safe place to work:* 76 S. C., 550; 73 S. C., 557. *Where master and vice principal are sued, the exoneration of the vice principal will not free the master unless his was the only agency by which the injury could have been caused:* 114 S. C., 22.

*Messrs. Frank G. Tompkins* and *H. N. Edmunds,* for respondent, cite: *Deceased had safe and dangerous way to do his work and chose the latter and cannot recover:* 82 S. C., 542; 84 S. C., 364; 85 S. C., 363; 86 S. C., 229; 89 S. C., 502. *Deceased assumed risk and nonsuit was proper:* 95 S. C., 30; 86 S. C., 69; 97 S. C., 403. *Fellow servant:* 71 S. C., 53. *Joint and concurrent act of negligence alleged and plaintiff must recover on such an act or not at all:* 33 S. C., 198; 45 S. C., 27; 55 S. C., 105; 82 S. C., 439; 59 L. R. A., 209.

August 1, 1921.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an appeal from an order on nonsuit, in favor of the defendant, Harry F. Hann, after the case against the defendant, Grant Collins, was withdrawn from the jury, without prejudice.

In order to understand the questions involved, it will be necessary for the complaint (except the formal parts

thereof), the reasons assigned by his Honor, the presiding Judge, in granting the nonsuit, and the exceptions, to be reported.

There was testimony to the effect that E. C. Ward was in charge of the dredge, as the representative of the owner, Harry F. Hann, at the time of the injury, that some of the machinery which was used was old and defective and that the place where E. C. Ward, as the representative of the master, directed the deceased to do the work assigned to him was unsafe. His Honor, the presiding Judge, was, therefore, in error in granting the nonsuit.

Reversed and remanded for new trial.

MR. JUSTICES WATTS and FRASER concur.

MR. JUSTICE COTHRAN (dissenting): It appears to me that the plaintiff has alleged certain specific acts of negligence in the complaint, and now seeks to recover damages, or rather in this appeal to reverse the order of nonsuit, upon an entirely different theory. She brings her action against the intestate's employee, H. F. Hann, and a co-employee, Grant Collins, alleging that the injuries resulting in the death of the intestate, James A. Grice, were caused by the joint and concurrent negligence of the employee, Collins. In a general statement (paragraph 4), the complaint alleges that all of the acts of negligence specified were the joint and concurrent act of those two defendants. Among these acts of negligence are breaches of duty which the defendant, Hann, as master, owed to the intestate, and in which the co-defendant, Collins, could not have participated and could not have been responsible for. Other acts of negligence are necessarily charged to the co-defendant, Collins, as the representative of the master for whose negligence the master was sought to be held liable; the complaint alleging that Collins was in the employment of Hann, and as such was engaged as a watcher or lookout upon said dredge, whose duty it was to give signals to warn plaintiff's intestate and other em-

ployees of any danger in the operation of said derrick in said. dredging." The particular acts of negligence of a servant of Hann for which he was sought to be held liable are plainly alleged in the complaint to have been those of Collins.

The plaintiff is now endeavoring to reverse the order of nonsuit, not upon the ground that the evidence tended to establish these alleged acts of negligence on the part of Collins, but that it tended to establish acts of negligence on the part of Ward, another employee, whose conduct is not relied upon in the complaint, and whose name is not even mentioned.

The inquiry should therefore be: (1) Is there any evidence in the case tending to show any breach as alleged of the duty of the master? (2) Is there any evidence in the case tending to show any breach as alleged of the duty of the defendant, Grant Collins?

It is apparent that under the allegations of the complaint the plaintiff has no right to rely upon any inferences of negligence which might be drawn from the conduct of Ward, for the simple reason that there is nothing in the complaint to connect Ward with the injury, and the defendant is entitled to a restriction of the plaintiff to the acts of negligence alleged in the complaint.

The facts, which are not in dispute, appear to be as follows: The defendant, Hann, was a contractor, engaged in dredging a creek; he was using what is called a "dipper dredge," which is a boatlike affair, operated by steam. From the front platform of the dredge a boom or crane extends at an angle, reaching out some distance ahead of the dredge proper. Upon this boom or crane is another appliance, a shaft, upon the end of which is attached a dipper or bucket. The boom or crane, the lower end of which is attached to the platform, has a lateral movement, and the shaft to which the bucket is attached a vertical movement; by means of pulleys, wire cables, and levers,

the boom or crane is shifted from one side of the stream to the other, and the bucket is lowered from one side of the stream to the other, and the bucket is lowered into the mud, scoops up a load, is raised to the level of the bank, shifted by the lateral movement of the boom to the edge of the bank and by the release of the doors at the bottom deposits its load on the bank. In the progress of the work submerged logs were encountered, which were difficult to balance on the bucket and raise. Just before the accident a particular log had been encountered. Several efforts had been made to balance it on the bucket and raise it out of the stream and on to the bank without success. At this time there were three men engaged in the operation of dredging—Grant Collins, E. C. Ward, and the intestate, J. A. Grice. Their relative ranks will be discussed later. Ward was the leverman, in charge of the steam power and the lever and other appliances which shifted the boom or crane into position and lowered, raised, shifted, and unloaded the bucket. Collins was on the platform to give signals to Ward, the leverman. Grice was the machinist of the outfit. After the efforts to raise the sleek log with the bucket had failed, it was decided to raise it to the surface of the water and chain it to the bucket; Ward, the leverman, "requested" Grice, the machinist, to take a pair of tongs and a chain, and when he raised the log to the surface to chain it to the bucket. Collins was directing the movement and in a position to warn Grice of danger. Evidently when the log was raised to the surface it was balanced on the bucket, and the idea of chaining it was abandoned by Collins. In the meantime Grice was walking towards the point where the bucket would emerge, along a narrow ledge between the water and the comparatively steep side of the cut. The log balanced upon the bucket was raised to about the level of the bank of the cut, and as the attempt was made to shift the boom or crane around and deposit the log on the bank out of the way, one end of

it struck either the bank or other obstruction, the other end slued around, striking Grice and fatally injuring him.

Much attention is given both in the testimony and in the printed arguments to the question whether Ward or Collins was the representative of the master upon the occasion in question. The appellant in his printed argument admits that Collins was working under Ward, and could not therefore have been the representative of the master, although his complaint is based upon the theory that Collins was such, so far as the negligence particularly charged to him was concerned. Accordingly, if the negligence was that of Collins, the plaintiff admits inability to recover, as under those circumstances Grice and Collins would clearly be fellow servants.

As to Ward: The conclusions of the Circuit Judge upon this subject are clearly sustained by the testimony. He says:

"The testimony all goes to show that Mr. Chitwood, the man in charge, the representative of the master, Hann, was not there, and that if there was any negligence on the part of the master that resulted in this accident, it was negligence of Ward. Mr. Chitwood, who was in charge of the whole work, and Ward himself, in answer to my questions, said that Grice was in charge of the work generally in the absence of Mr. Chitwood, but that he was not to interfere with Mr. Ward in the management of the machinery part of the work. And Mr. Chitwood, the man in charge, who assigned these various duties, said, in answer to my question, that, under the employment of Grice he was not subject to order of Ward, and he did not have to obey his instructions, or his directions, or his orders, but that he was merely expected, while he was not engaged in work he was actually employed to do, to render such assistance as he might. I canot see that he could be anything more than a fellow servant with Ward. He was in charge generally, under the testimony, of the whole work when Chitwood was not there."

Chitwood, Collins and Ward all testified that while Ward had the right to call on Grice to assist in chaining the log, Grice was not obliged to obey him.  Ward testified that he "didn't claim to be over Grice in any way;" that "Grice was representing Mr. Chitwood (the captain foreman) when he was not there."  Collins testified: "To a certain extent, Mr. Grice was acting foreman."

Under the law, however, it was immaterial whether the rank or grade of Ward was superior to that of Grice, whether or not Ward was vice principal; for they were both engaged at the time in the common enterprise of removing the log from the stream, and pro hac vice, they were fellow servants, regardless of their respective grades or ranks.  See authorities upon this subject quoted in the opinion of the writer in the case of *Leopard v. Beaver Duck Mills*, 117 S. C., 122; 108 S. E., 190, recently filed.

The suggestion that any of the instrumentalities were defective and worn cannot be relied upon, for the reason that there is no allegation of such fact in the complaint.

The testimony does not show that the master failed in any duty which he owed to the servant in the furnishing of a reasonably safe place to work or reasonably safe instrumentalities with which to work; it clearly demonstrates that whatever lack of safety existed in either was due to the want of care on the part of the intestate or negligence on the part of his fellow servants, and that if there had been any lack of safety in either the intestate was thoroughly familiar with the entire situation and the dangers, if any, and would be held to have assumed the risk of injury from their operation, particularly as to alleged defects in the machinery, the repair of which was a part of his own duties.

The judgment below should therefore be affirmed.